THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROGER HALL, Defendant-Appellant.

Third District No. 3—84—0084

Opinion filed July 12, 1985.—Rehearing denied August 21, 1985.

962

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

Raymond Kimbell III, State's Attorney, of Galesburg (John X. Breslin and Rita Kennedy Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE BARRY delivered the opinion of the court:

Defendant, Roger Hall, appeals from his convictions in the circuit court of Knox County on charges of rape and of armed robbery and

from his consecutive sentences of 30 years' imprisonment imposed on each count.

According to the testimony adduced at trial, a young woman student was attacked and raped about 8:40 p.m. on January 19, 1983, as she was returning to the Knox College campus from a nearby convenience store. A man jumped out from behind some shrubbery as she passed near the science building, grabbed her from behind, and pulled her toward the bushes. He asked for money, took $1.95 (three quarters, two dimes, and a $1 bill folded in fourths) from one of her pockets, placed a knife at her throat, and forced her to walk to a nearby alcove, where he told her to disrobe. He then raped her. After a total elapsed time of about 20 minutes, the man released her. Immediately after the rape, the victim returned to the sidewalk near the store, where she encountered two young men, one of whom called the police, while the other walked her to her dorm. The police arrived at 9:10 p.m.

The victim described her attacker as a white male between 5 feet 6 inches and 5 feet 7 inches tall, weighing 145 to 150 pounds, with a mustache, long beard, and shoulder-length hair. This description was broadcast over the police radio where a police officer heard it and thought of defendant. Two officers went to defendant's apartment some three blocks from where the attack took place. Defendant answered the door in his underwear and admitted the officers who looked around the apartment, noting same damp towels and also noting that defendant had alcohol on his breath and that he spoke with a southern accent.

The officers left defendant's apartment about 9:27 p.m. and then received a radio message indicating that the victim had further described her attacker as having a southern accent and alcohol on his breath and also as being dirty. The officers then started to go back to defendant's apartment; on the way, they saw defendant in a phone booth. When they stopped, he agreed to go with them to Cottage Hospital for a showup identification.

In the meantime the victim had been taken to the hospital for examination. After the victim was notified that a suspect was being brought in for identification, she was taken to the emergency room door. When defendant arrived at the hospital with the two policemen he was asked to speak. The victim then identified him as her assailant.

While at the hospital, various blood and hair samples were collected from the victim and from her clothing for testing and comparison with samples collected from defendant. When defendant was

searched, the officers found a $1 bill folded four times plus 10 coins (five quarters and five dimes). The victim also testified that she later identified defendant a second time at the police department where she saw him through a one-way window.

Testifying in behalf of defendant was a girlfriend of his who stated that she was with defendant until about 8:30 or 8:35 p.m. the evening of January 19 and that when he left her he was clean and well-groomed. In rebuttal the State called an investigating officer who said that when he interviewed defendant at 9:17 p.m. on January 19, 1983, defendant said he had been drinking at the Silver Front Tavern until he left between 8:20 and 8:30 p.m., and that he had not had contact with anyone between the time he left the tavern and the time the officers came to his apartment. The tavern was about three blocks from defendant's apartment.

There was considerable scientific evidence introduced which indicted that various fibers, hairs, blood, and seminal material found on the victim's clothing and person could have come from defendant (*i.e.,* did not exclude him), and none were found that could not have been either his or hers. The defendant matched the victim's physical description of her attacker as to height, weight, hair, etc. At the conclusion of the trial, the jury found defendant guilty of rape and of armed robbery.

While post-trial motions were pending, the trial court conducted a hearing in response to a letter from defendant which questioned the adequacy of defense counsel's representation. The court appointed separate counsel to investigate the questions raised by defendant and to report to the court. The attorney so appointed interviewed witnesses, visited the scene of the crime, reviewed the trial preparation work of trial counsel, and considered other relevant materials from the files, though not the trial transcript, and reported to the court his conclusion that trial counsel's representation of defendant was not of such a character as to render the court proceedings a sham or farce, nor was it of such low calibre as to be incompetent. The prosecuting attorney agreed with that conclusion, and trial court stated that he had read the report and concurred with the conclusion. Defendant's request for different counsel was then denied, and the court ordered trial counsel to proceed to represent defendant during the hearings on the formal post-trial motion and at sentencing.

At a later date, trial counsel submitted a motion to withdraw from the subsequent proceedings because defendant no longer trusted counsel, but that motion was denied. At the hearing on the post-trial motion which followed the hearing on the motion to withdraw,

defendant refused to enter the court room. The hearing was continued, and at a later date, when the hearing resumed with defendant present, trial counsel argued numerous issues raised in the original motion for a new trial, and also presented several issues raised by defendant, including the failure of the State to disclose certain test results, and also trial counsel's incompetence, in order to preserve those issues for appeal. The trial court denied the motion for new trial, and then proceeded to the sentencing hearing, again with trial counsel representing defendant.

After hearing arguments of counsel, the trial court ruled that this was an appropriate case for consecutive sentences in that the armed robbery and the rape were two separate acts. The court then imposed a 30-year sentence on each count, to be served consecutively.

■ The first issue raised on appeal is whether the identification of defendant as the attacker was unnecessarily suggestive and conducive to mistaken identification so as to deny defendant due process of law. Defendant argues that the one-on-one showup at the hospital was inherently suggestive.

Illinois courts have recognized the inherent suggestiveness involved in one-on-one showups. (*People v. McKinley* (1977), 69 Ill. 2d 145, 370 N.E.2d 1040.) However, Illinois courts have also recognized that such identification testimony may nevertheless be admissible if certain factors outweigh the effect of this suggestiveness. In *People v. McKinley*, the court listed the factors to be considered in determining such admissibility:

> " '[T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.' (*Manson v. Brathwaite* (1977), 432 U.S. 98, 114, 53 L. Ed. 2d 140, 154, 97 S. Ct. 2243, 2253.)" 69 Ill. 2d 145, 152, 370 N.E.2d 1040, 1043.

One-man showups have been approved in such cases as *People v. Lippert* (1982), 89 Ill. 2d 171, 432 N.E.2d 605, and *People v. Ruffolo* (1978), 64 Ill. App. 3d 151, 380 N.E.2d 1204, where prompt identification was necessary to determine whether the police should continue their search. In the case before us, the victim testified that she was able to see her attacker's hair, beard, mustache, and the side of his face from the light through the trees during the attack. She paid close attention to the details relating to the attack and was not hysterical or disoriented. Her prior description of the attacker was extremely accurate and fit the defendant, and she was very positive in her iden-

tification of defendant at the hospital entrance, particularly after she heard him speak. Finally, the showup occurred no more than 40 minutes after the rape. (See *People v. Ruffolo* (1978), 64 Ill. App. 3d 151, 380 N.E.2d 1204, where we held that a showup within 50 minutes of the crime was justified, and *People v. Lippert* (1982), 89 Ill. 2d 171, 432 N.E.2d 605, where the supreme court held that a showup 55 minutes after a robbery was admissible.) Considering all these facts, we believe the trial court did not abuse its discretion in determining that the one-on-one showup was necessary and was sufficiently reliable to be admitted into evidence. We conclude that no error occurred in its admission into evidence.

■ Defendant also contends that he was not proved guilty beyond a reasonable doubt since the clothing he allegedly wore during the rape was not found and since the scientific evidence was inconclusive. We find defendant's argument unpersuasive. It is well established in Illinois that a positive identification by a single witness is sufficient to support a conviction and that the conviction in a rape case will be sustained based on the uncorroborated testimony of the victim if her testimony is clear and convincing. (*People v. Berry* (1980), 86 Ill. App. 3d 755, 408 N.E.2d 466; *People v. Sweeney* (1977), 46 Ill. App. 3d 858, 361 N.E.2d 344.) Here, the victim's testimony was "clear and convincing" in that her identification was positive, was corroborated by defendant's size, looks, and his southern accent, and was further corroborated by the discovery of a knife and money that matched the items described by the victim. Finally, a head hair similar to the victim's was combed from the defendant's head hair. This latter fact, while not conclusive, was certainly corroborative of the victim's testimony. We cannot say that the State failed to prove defendant guilty beyond a reasonable doubt.

■ Defendant next contends that the trial court erred in the way it handled his post-trial allegation of ineffective assistance of counsel. He claims (1) that the trial court improperly delegated its authority to determine the effectiveness of defense counsel; (2) that defendant's trial counsel was forced into a conflict of interest when he was required to argue his own incompetence; (3) that the trial court determined counsel's effectiveness by an improper standard. The State has responded to these arguments, first, by insisting that the issue of ineffective assistance of counsel cannot be considered on appeal because the record only includes very general statements of ineffective assistance which lack sufficient specificity for review, and second, by contending that defendant was competently represented at trial.

When the trial court received a letter from defendant setting out

his complaints about the way defense counsel had handled his case, the court appointed independent counsel to investigate and "to present whatever evidence is necessary to show whether or not Mr. Stoffel's conduct was incompetent in any way." Four months later, the court received the report of the independent counsel in which he considered a number of particular issues raised by defendant. The special counsel stated:

"I conclude that even though I may differ with Mr. Stoffel in the manner in which the strategy and tactics of this trial would have been carried out, I do not believe that based upon the court authority and the citations which I have cited that I can say that Mr. Stoffel's representation of the defendant was of such a character that it led the court proceedings to be a sham and a farce nor do I characterize Mr. Stoffel's representation as being incompetent and of such low calibre."

The trial court then stated that he had read the report, that he concurred with it and that the defendant's request for different counsel because of incompetence would be denied.

Defendant argues that the trial court improperly delegated its authority to rule on the effectiveness of defendant's trial counsel, and defendant also argues that the "sham or farce" standard used by special counsel and by the court was not the correct standard under the law of Illinois. We are unable to say that the trial court erred in its ruling, although we agree that it would have been better procedure for the court to have made findings of its own with regard to the effective assistance of counsel issue, and furthermore, we agree that the trial court concurred with the wrong standard.

When a defendant files a *pro se* motion for a new trial on the ground of ineffective assistance of counsel at trial, it is the responsibility of the trial judge to make the determination as to whether the defendant had effective trial counsel in ruling on the motion. (See *People v. Krankel* (1984), 102 Ill. 2d 181, 464 N.E.2d 1037.) Here, the trial judge did not actually conduct a hearing on defendant's request for a new trial but rather received and adopted as his own the findings of specially appointed counsel.

■ Contrary to the State's assertion, the record on appeal does include a copy of defendant's letter to the trial judge which was treated as a *pro se* motion for a new trial. It also includes a copy of the written report of specially appointed counsel. Our review of these documents indicates that defendant's complaints were sufficiently specific to place the issue of effective assistance of counsel before this court. (See *People v. Williams* (1984), 127 Ill. App. 3d 231, 468

N.E.2d 807.) By adopting the analysis of the specially appointed counsel, it is obvious that the trial court indicated his agreement with the attorney's finding of no incompetence. However, we believe it would have been better procedure for special counsel to present defendant's arguments to the court to the extent that any had merit and then leave the ultimate determination to the court.

Before saying that defendant is entitled to a new hearing on his motion, however, we must consider whether defendant was prejudiced by the deficiencies in the post-trial proceedings in this case. The Illinois Supreme Court has recently adopted the rule of the United States Supreme Court for challenges to effectiveness of counsel, replacing the prior standard of "actual incompetence producing substantial prejudice." (*People v. Greer* (1980), 79 Ill. 2d 103, 402 N.E.2d 203.) In *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246, the Illinois court discussed the ruling of *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, as follows:

> "The court held that the constitutionally guaranteed assistance of counsel has not been provided if the defendant can prove that counsel's representation fell below an objective standard of reasonableness and that counsel's shortcomings were so serious as to 'deprive the defendant of a fair trial, a trial whose result is reliable.' (466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064.) The court also indicated a defendant must establish 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' (466 U.S. 668, 694, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068.) Emphasizing that the defendant must prove prejudice, the court stated: 'The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' (466 U.S. 668, 686, 80 L. Ed. 2d 674, 692-93, 104 S. Ct. 2052, 2064.) The court also directed that 'the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances.' 466 U.S. 668, 688, 80 L. Ed. 2d 674, 694, 104 S. Ct. 2052, 2065." (*People v. Albanese* (1984), 104 Ill. 2d 504, 525, 473 N.E.2d 1246.)

We think it significant that the Illinois Court also saw fit to quote from *Strickland* in part as follows:

> " 'The availability of intrusive post-trial inquiry into attorney performance or of detailed guidelines for its evaluation would encourage the proliferation of ineffectiveness challenges. Crimi-

nal trials resolved unfavorably to the defendant would increasingly come to be followed by a second trial, this one of counsel's unsuccessful defense.' *** (466 U.S. 668, 690, 80 L. Ed. 2d 674, 694-95, 104 S. Ct. 2052, 2065-66.)" *People v. Albanese* (1984), 104 Ill. 2d 504, 526, 473 N.E.2d 1246.

 █ Having reviewed the record in this case, including defendant's assertions of ineffective assistance of counsel, we are convinced that the trial counsel's conduct did not undermine "the proper functioning of the adversarial process" to the extent that the reliability of the result is in doubt. Defendant claims that certain evidence was not introduced, but he has not shown that the evidence in question would have benefitted the defense or that it would have changed the result. Counsel conducted a vigorous defense based on the inconclusive nature of the forensic evidence and on the alibi testimony of defendant's girlfriend. Without a showing that he was prejudiced, defendant is not entitled to further consideration of his claim of inadequate representation. In so ruling, we also conclude that defendant was not prejudiced by the use of the "sham or farce" standard instead of the standard of "reasonable professional assistance" now approved for Illinois.

██ When the formal post-trial motion was heard, trial counsel mentioned the effective assistance of counsel issue in order to preserve the issue for appeal. Whenever trial counsel attempts to argue his own incompetence, a conflict of interest arises. (*People v. Terry* (1970), 46 Ill. 2d 75, 262 N.E.2d 923.) However, counsel's attempt here to preserve an issue already heard and decided can hardly be considered reversible error. At that stage, any conflict was harmless and not prejudicial.

██ Defendant next contends that the trial court erred in refusing to give defendant's proposed instruction No. 1, which listed several factors involved in assessing the reliability of witness identification. The proposed instruction was not an IPI instruction. Instead, the court gave IPI Criminal Nos. 1.02 and 2.03, which have previously been held adequate. (See *People v. Kubat* (1983), 94 Ill. 2d 437, 475, 447 N.E.2d 247, 263.) In fact, the Committee Comments to IPI Criminal No. 3.15 recommend that special instructions on the subject of eyewitness identification *not* be given. We hold the trial court did not err in refusing defendant's proposed instruction No. 1.

██ Defendant's final contention is that the two consecutive 30-year sentences were so excessive as to amount to an abuse of discretion. Defendant has a lengthy record of violent crime convictions dating back to 1969, including manslaughter, burglary, assault and

battery with intent to commit rape, and unlawful use of weapons. Past prison terms have not succeeded in changing defendant's pattern of criminal behavior. After considering the nature and circumstances of this knife-point rape and defendant's extensive criminal record, the trial court found that consecutive sentences were necessary to protect the public. We will not substitute our judgment for that of the trial judge, who saw and heard the witnesses. We cannot say that this sentence was an abuse of discretion.

We affirm the convictions and sentences of the circuit court of Knox County.

Affirmed.

SCOTT and STOUDER, JJ., concur.