THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CURTIS L. WASSON, Defendant-Appellant.

Fourth District   No. 4—90—0304

Opinion filed April 4, 1991.

Daniel D. Yuhas and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellant.

Craig H. DeArmond, State's Attorney, of Danville (Kenneth R. Boyle, Robert J. Biderman and Amy K. Schmidt, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

On July 10, 1989, defendant Curtis Wasson was charged by amended information with two counts of aggravated indecent liberties with a child (Ill. Rev. Stat. 1983, ch. 38, pars. 11—4.1(b)(1)(A), (b)(1)(C)) and one count of aggravated criminal sexual assault (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 12—14(b)(1)). The first count of aggravated indecent liberties with a child alleged defendant, between January 1, 1983, and June 30, 1984, performed an act of sexual intercourse with M.F., who was under nine years of age when the act was committed. The second count alleged between January 1, 1983, and June 30, 1984, defendant performed an act of penetration by placing his penis into the genital opening of M.F., who was under the age of nine when the act was committed. The charge of aggravated criminal sexual assault alleged defendant, between July 1, 1984, and April 25, 1985, committed an act of sexual penetration with M.F. in placing his penis into her vagina. At a bench trial held on July 13, 1989, defendant was found guilty of both counts of aggravated indecent liberties with a child and not guilty of aggravated criminal sexual assault. Defendant was sentenced to eight years' imprisonment.

Defendant was previously tried for these offenses on May 7, 1987, and convicted of aggravated criminal sexual assault. (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 12—14(b)(1).) The information had alleged between January 1, 1983, and April 24, 1985, defendant had committed an act of sexual penetration with M.F., who was under 13 years of age when the act was committed. On appeal, we reversed defendant's conviction for aggravated criminal sexual assault and remanded it for a new trial, where the information alleged the offense had been committed during a time period which commenced before the effective date of the statute, July 1, 1984. *People v. Wasson* (1988), 175 Ill. App. 3d 851, 530 N.E.2d 527.

Defendant now appeals from his current conviction, alleging (1) he was denied a fair trial when an alleged expert was permitted to give psychological testimony that M.F. suffered from post-traumatic stress syndrome as a result of sexual child abuse; (2) his conviction for aggravated indecent liberties with a child should be reversed because he had previously been tried for aggravated criminal sexual assault based upon the same facts and, accordingly, the State was barred from pur-

suing multiple prosecutions under sections 3—3 and 3—4 of the Criminal Code of 1961 (Code) (Ill. Rev. Stat. 1983, ch. 38, pars. 3—3, 3—4); and (3) his conviction for aggravated indecent liberties with a child should be reversed or, alternatively, reversed and remanded for a new trial because the amended information was filed after the expiration of the three-year statute of limitations and failed to aver facts which would invoke an exception. We affirm.

At the bench trial held on July 13, 1989, Dr. W.R. Elghammer, a pediatrician, testified his studies and the studies of others indicated the size of the hymenal opening in girls from birth to age 13 ranges from a pinpoint to four millimeters. Among girls who have been sexually abused, the opening is larger than four millimeters. Dr. Elghammer cited studies which indicated the size of the hymenal opening is an accurate predictor as to whether child sexual abuse has occurred. Dr. Elghammer stated after sexual abuse has ended, the hymenal opening reverts to the normal size of four millimeters or less.

On April 23, 1985, Dr. Elghammer conducted a physical examination of M.F. and took an oral history from her. She informed the doctor that her uncle "took off his clothes and my clothes and laid on top of me and put his thing in my thing." M.F. told the doctor that it had happened once three years ago and twice 1½ years ago. Dr. Elghammer measured the hymenal opening of M.F. and it measured eight millimeters. He testified this finding was consistent with sexual abuse.

M.F. testified she was 12 years old and lived with her mother, father, and two brothers. Defendant is her father's brother. Defendant never lived with her family but occasionally stayed at their home. He would sleep upstairs in the same room with M.F. and her two brothers. Her brothers had bunk beds and she had her own bed. When defendant stayed, he would baby-sit the children. Occasionally, defendant stayed as long as two or three weeks.

M.F. testified that when she was in Ms. Davis' kindergarten class, defendant baby-sat her and her two brothers while her parents went to the license bureau. Defendant gave her brothers money and sent them to the store. While they were gone, defendant came into her bedroom while she was changing clothes. Defendant threw her down on the bed and began playing with her like they were on a trampoline. When they stopped, defendant asked her to take off her underwear and M.F. refused. Defendant then took off her underwear and all of his clothing. Defendant got on top of M.F. and began going up and down, putting his penis in her vagina. M.F. testified it hurt and she told him to stop. Defendant did not stop until M.F.'s brothers returned. M.F. testified this recurred once every night while defendant was staying with them.

M.F., who repeated the first grade, did not tell anyone about what had occurred until she was in the second grade. She told a friend of hers, who went home and told her mother. The mother called the school nurse, Ms. Tedrick, who questioned M.F. about it. M.F. testified she told Tedrick about the first time it had happened. M.F. did not remember the last time it had happened.

When asked at what age this activity first occurred, M.F. testified, "last time I said five or six but I meant to say four." M.F. testified she did not remember it happening sometime after Easter. She testified it occurred the most when she was in Ms. Trask's first-grade class for the second year. M.F. did not remember testifying at the first trial that she had talked to a policeman and told him that it had happened about three times. Judicial notice was taken of inconsistencies in M.F.'s testimony between the first and second trial.

Claire Kirts, M.F.'s mother, testified defendant is her husband's brother and had been M.F.'s favorite uncle. Defendant was also a frequent overnight visitor in their home. They lived in a two-bedroom home and, until M.F. was in first grade, she shared an upstairs bedroom with her two brothers. The boys slept in bunkbeds, while M.F. had her own bed. Even after having been given her own room, M.F. would often prefer sleeping in her brothers' room. M.F. would sometimes sleep with defendant in the boys' room when he spent the night.

Kirts testified M.F. was in Ms. Trask's first grade for both the 1982-83 and the 1983-84 school years. M.F.'s school work was very poor. She preferred socializing with younger children and would mother them. Kirts testified after defendant no longer came to their home, M.F.'s grades improved and she started acting more her own age. She also socialized with children more her own age.

A stipulation was entered admitting the testimony of police officer Robert Cannon from the first trial. According to this testimony, Officer Cannon called defendant in for questioning concerning this charge and defendant denied the allegations.

A stipulation was also made to admit the testimony of Nancy Tedrick from the previous trial. Tedrick, the school nurse at Catlin Grade School, called eight-year-old M.F. into her office as a result of a telephone call from a parent on April 22, 1985. Tedrick asked M.F. whether or not she had told something to her friends about her uncle. M.F. told Tedrick that while they were alone in her home, defendant had come into her bedroom while she was changing clothes, took her pants off, and put his "humper" between her legs. M.F. indicated this act had occurred near Easter. At first, Tedrick thought M.F. was referring to the most recent Easter, but when Tedrick asked M.F. about

this, M.F. responded "No, it happened when I was in Ms. Trask's room." Tedrick testified M.F. had spent both the 1982-83 and the 1983-84 school years in Ms. Trask's room. M.F. indicated to Tedrick that the incident she was referring to was the most recent incident, but that other incidents had occurred. Tedrick testified M.F. was very matter of fact and unemotional in describing these events to her.

Mary Lou Cooly testified she is a therapist in the sexual abuse and neglect program at the Center for Children's Services in Danville. She has been employed with the center for four years and works with children who have been abused or neglected and their families. Cooly first began working with M.F. in November 1985. M.F. was brought to the center because she was displaying self-destructive behaviors, such as pulling her hair, biting her nails, and failing in school. When Cooly first met M.F., M.F. was withdrawn and lacked self-esteem. M.F. was having problems communicating with people, did not appear to trust anyone, and was doing poorly in school. Cooly stated these behaviors are often indicative of a child having been sexually abused. Cooly also attributed M.F.'s tendency to associate with younger children as being consistent with the behavioral indicators of a victim of sexual abuse, but stated such behavior could also be a result of academic failure.

Cooly testified if abuse continues for a period of time it would not be inconsistent for the child not to report the abuse until she has some outside support, such as a girlfriend she can trust. Cooly testified it might be consistent for M.F. to have spoken in a rather flat way and not to have been particularly emotional when she told the school nurse about what had happened. An abused child may also gradually tell more and more of the story and some of the story may not be consistent.

The defense presented no evidence.

Defendant contends he was denied a fair trial when Cooly was permitted to give psychological testimony M.F. suffered from post-traumatic stress syndrome as a result of sexual child abuse. Specifically, defendant contends (1) testimony concerning post-traumatic stress syndrome should not be admitted in child sexual abuse cases; (2) Cooly was not qualified to testify and the State failed to make an adequate foundation concerning the basis of her expert testimony; and (3) even if the evidence was admissible, its prejudicial effect outweighed its probative value. We disagree with these contentions.

Section 115—7.2 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat., 1988 Supp., ch. 38, par. 115—7.2), effective January 1, 1989, provides:

"In a prosecution for an illegal sexual act perpetrated upon a victim, including but not limited to prosecutions for violations of Sections 12—13 through 12—16 of the Criminal Code of 1961, testimony by an expert, qualified by the court relating to any recognized and accepted form of post-traumatic stress syndrome shall be admissible as evidence."

We previously applied this statute in *People v. Roy* (1990), 201 Ill. App. 3d 166, 558 N.E.2d 1208, in permitting the admission of evidence of post-traumatic stress syndrome in a child sexual abuse case in spite of the defendant's argument that this theory lacked scientific acceptability. In *Roy*, the expert testified the child victim was suffering from post-traumatic stress syndrome and explained this may occur when a child has suffered a traumatic experience. The expert went on to explain the various ways the syndrome may manifest itself and how the child victim had exhibited these symptoms. This court found the evidence was recognized and accepted on the basis of the expert's testimony alone. Beyond generally objecting, the defendant did not submit any contrary evidence. *Roy*, 201 Ill. App. 3d at 180, 558 N.E.2d at 1218.

Similarly, here, Cooly identified known model indicators of the syndrome and testified to M.F.'s manifestation of these symptoms. Defendant did not submit any contrary evidence to dispute the reliability of the syndrome in children.

■ We note defendant's citations on appeal to the decisions of other jurisdictions which preclude admission of such testimony and the fact the syndrome labeled "Child Sexual Abuse Accommodations Syndrome" is not specifically listed in the *Diagnostic and Statistical Manual of Mental Health* III (1987) (DSM III). However, very few concepts are generally accepted by all behavioral scientists. (*People v. Nelson* (1990), 203 Ill. App. 3d 1038, 561 N.E.2d 439.) Moreover, the American Psychiatric Association in its discussion of post-traumatic stress disorder recognizes the disorder may be experienced due to rape or assault and the disorder can occur at any age, including childhood. The symptoms described for post-traumatic stress disorder in children are the same as those frequently described as symptoms for child sexual abuse accommodations syndrome. In our view, child sexual abuse accommodations syndrome is a recognized and accepted form of post-traumatic stress disorder. DSM III, at 248-49.

■ Cooly's testimony also included the possibility some of M.F.'s symptoms may be attributable to other factors such as her academic failure. Here, the reality that many of the symptoms may be caused by

factors other than sexual abuse goes to the weight to be accorded such testimony and not its admissibility.

Regarding Cooly's testimony, defendant further contends the State failed to demonstrate she was qualified as an expert and Cooly did not demonstrate her testimony regarding post-traumatic stress syndrome was reliable.

■ Defendant cites the decisions of *People v. Server* (1986), 148 Ill. App. 3d 888, 499 N.E.2d 1019, and *People v. Douglas* (1989), 183 Ill. App. 3d 241, 538 N.E.2d 1335, in support of his argument Cooly was not a qualified expert. However, the amendment of section 115—7.2 rendered *Server* and *Douglas* inapplicable to this issue. (*People v. Harp* (1990), 193 Ill. App. 3d 838, 550 N.E.2d 1163.) Prior to January 1, 1989, section 115—7.2 allowed expert testimony "by a behavioral psychologist, psychiatrist or physician." (Ill. Rev. Stat. 1987, ch. 38, par. 115—7.2.) The amendments of Public Act 85—1279 deleted the list of professionals and replaced it with "an expert qualified by the court." (Pub. Act 85—1279, eff. Jan. 1, 1989 (1988 Ill. Laws 2649).) In doing so, the legislature recognized persons other than those in the medical field may be able to provide relevant, reliable insight into post-traumatic stress syndrome. The qualification of experts is within the broad discretion of the trial court and will not be disturbed absent an abuse of discretion. *People v. Bradley* (1988), 172 Ill. App. 3d 545, 526 N.E.2d 916.

■ In the present case, the trial court clearly acted within its discretion in allowing Cooly's testimony. Although the record does not indicate Cooly possessed advanced academic degrees, her background and training were sufficient to qualify her to testify. She had worked as a therapist in the sexual abuse and neglect program at the Center for Children's Services for the past four years. Her duties required her to work with children who have been abused and neglected and show behavioral and emotional problems. She testified a good portion of these children have been sexually abused. For the last two years, she had run a therapy group for adolescent sexual perpetrators, most of whom had themselves been sexually abused. She had attended a number of workshops regarding child sexual abuse victims in addition to participating in practical training and schooling. Previously, Cooly was employed for five years at Indiana State University in the department of counseling.

■ Defendant further argues Cooly never testified post-traumatic stress syndrome is recognized and accepted in child sexual abuse cases, and the State thus failed to establish it as being admissible under section 115—7.2. However, Cooly responded affirmatively when asked if

certain model behavioral characteristics in child sexual abuse victims were known and recognized. Although Cooly did not label the theory specifically as being post-traumatic stress syndrome or child sexual abuse accommodations syndrome, section 115—7.2 has not been interpreted to require such a recitation. In *People v. Ridgeway* (1990), 194 Ill. App. 3d 881, 551 N.E.2d 790, this court upheld the admission of evidence concerning behavioral indicators of sexually abused children without requiring labeling under any particular syndrome.

Last, defendant contends even if Cooly's testimony was admissible pursuant to section 115—7.2, it should have been excluded because its prejudicial effect outweighed its probative value. Defendant argues Cooly's testimony impermissibly allowed her to vouch for M.F.'s credibility, and proposes nonexperts be utilized to provide evidence concerning the child victim's post-traumatic behavior with a nontreating expert witness only testifying concerning the syndrome itself.

We do not agree with defendant's contentions, nor do we find the prejudicial effect of this evidence outweighed its probative value. Defendant's arguments ignore the purpose of section 115—7.2, which deems as probative treating experts' testimony concerning the victim's behavior as being consistent with known syndromes. An expert witness may testify to an opinion on an ultimate issue in a case. (*People v. Harris* (1989), 132 Ill. 2d 366, 547 N.E.2d 1241.) Section 115—7.2 merely provides for the admission of such testimony. It does not preclude the trier of fact from weighing the witness' testimony and credibility, nor does it obligate the trier of fact to openly accept the witness' opinion. *Roy*, 201 Ill. App. 3d at 180, 558 N.E.2d at 1218.

The case at bar was a bench trial in which defendant was found guilty only of the offenses committed between January 1, 1983, and June 30, 1984. M.F. clearly testified to these occurrences and had earlier reported them to Ms. Tedrick. We do not find Cooly's testimony to have unduly prejudiced the defendant and find the evidence to have been properly admitted.

Next, defendant contends his conviction for aggravated indecent liberties with a child should be reversed because he had previously been tried for aggravated criminal sexual assault based upon the same facts and, accordingly, the State was barred from pursuing multiple prosecutions under sections 3—3 and 3—4 of the Code. (Ill. Rev. Stat. 1989, ch. 38, pars. 3—3, 3—4.) Though defendant is asserting his statutory rights have been violated, he concedes no violation of the double jeopardy clause has occurred. We agree with defendant that his subsequent conviction for aggravated indecent liberties with a child was based upon the same facts as the previous charge for aggravated crim-

inal sexual assault. However, we disagree with defendant's contention that this requires a reversal of defendant's current conviction.

In *People v. Wasson* (1988), 175 Ill. App. 3d 851, 530 N.E.2d 527, we reversed defendant's conviction for aggravated criminal sexual assault and remanded for a new trial. In doing so, we found the charging instrument to be deficient as the dates alleged for the commission of aggravated criminal sexual assault encompassed a time period before the effective date of the statute creating the crime. We stated:

> "Thus, it would have been better practice for the State to charge defendant under the old statute with one or more counts alleging the offense of aggravated indecent liberties with a child was committed between January 1, 1983, and June 30, 1984 (Ill. Rev. Stat. 1983, ch. 38, par. 11—4.1(a)(1)(A)), and, under the current statute, to enter additional counts for the act or acts committed between July 1, 1984, and April 24, 1985 (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 12—14(b)(1))." *Wasson*, 175 Ill. App. 3d at 854-55, 530 N.E.2d at 529.

Sections 3—3 and 3—4 provide the statutory guidelines prohibiting multiple prosecutions for the same act. (Ill. Rev. Stat. 1989, ch. 38, pars. 3—3, 3—4.) Under section 3—3(b), if several offenses are known to the State at the time of commencing prosecution and the offenses are within the jurisdiction of a single court, they must be prosecuted in a single prosecution. (Ill. Rev. Stat. 1989, ch. 38, par. 3—3(b).) However, exceptions to this rule also exist. Section 3—4(d)(2) allows reprosecution "if subsequent proceedings resulted in the invalidation, setting aside, reversal, or vacating of the conviction." Ill. Rev. Stat. 1989, ch. 38, par. 3—4(d)(2).

Accordingly, reprosecution of defendant for both aggravated criminal sexual assault and aggravated indecent liberties with a child was not barred. (See *People v. Trolia* (1982), 107 Ill. App. 3d 487, 494, 437 N.E.2d 804, 810.) Defendant's former prosecution in this case ended in reversal and remand and not in final conviction. The case of *People v. Mullenhoff* (1965), 33 Ill. 2d 445, 211 N.E.2d 744, which defendant relies upon, is readily distinguishable from the case at bar because the earlier prosecution in *Mullenhoff* ended in an acquittal. The State in this case correctly joined the offenses of aggravated indecent liberties with a child and aggravated criminal sexual assault and no violation of sections 3—3 and 3—4 occurred.

Defendant's final argument is his conviction for aggravated indecent liberties with a child should be reversed because the amended information was filed after the expiration of the statute of limitations and failed to allege facts which would have invoked an exception.

Section 3—5 of the Code provides:

"General Limitations. (a) A prosecution for first degree murder, second degree murder, involuntary manslaughter, reckless homicide, treason, arson, or forgery may be commenced at any time.

(b) Unless the statute describing the offense provides otherwise, or the period of limitation is extended by Section 3—6, a prosecution for any offense not designated in Subsection (a) must be commenced within 3 years after the commission of the offense if it is a felony, or within one year and 6 months after its commission if it is a misdemeanor." (Ill. Rev. Stat. 1989, ch. 38, par. 3—5.)

Section 3—6 provides for extensions to the statute of limitations. Included among these extensions is:

"When the victim is under 18 years of age, a prosecution for criminal sexual assault, aggravated criminal sexual assault, criminal sexual abuse or aggravated criminal sexual abuse may be commenced within one year of the victim attaining the age of 18 years." Ill. Rev. Stat. 1989, ch. 38, par. 3—6(d).

The amended information, filed on July 10, 1989, charged defendant with two counts of aggravated indecent liberties with a child for conduct which occurred between January 1, 1983, and June 30, 1984, and one count of aggravated criminal sexual assault for conduct which allegedly occurred between July 1, 1984, and April 25, 1985. Defendant was convicted of activities which occurred between January 1, 1983, and January 30, 1984. Defendant contends this criminal activity occurred more than three years prior to the filing of the charges on July 10, 1989, and the charging instrument failed to allege any of the exceptions provided in section 3—6 of the Code. Ill. Rev. Stat. 1989, ch. 38, par. 3—6.

Defendant cites *People v. Morris* (1990), 135 Ill. 2d 540, 554 N.E.2d 150, and *People v. Strait* (1978), 72 Ill. 2d 503, 381 N.E.2d 692, in asserting this alleged defect automatically entitles him to a new trial. Both of these cases recite the general rule that if an indictment or information shows on its face the offense was not committed within the period of limitations, facts must be averred which invoke one of the exceptions contained in section 3—6. *Morris*, 135 Ill. 2d at 543, 554 N.E.2d at 151; *Strait*, 72 Ill. 2d at 504-05, 381 N.E.2d at 693.

However, both *Morris* and *Strait* are distinguishable from the case at bar. There, the defendants filed timely motions to dismiss the charging instruments alleging the statute of limitations had been violated. The trial courts denied the motions. In both cases, the State was

placed on notice of the problem and afforded the opportunity to amend the charge to correct the defect. In this case, defendant failed to file a pretrial motion to dismiss. This failure came despite the fact that during a motion for continuance the trial court expressly directed motions to be filed on the issue. No motions to dismiss were subsequently presented and the trial went forward on the amended information. Had defendant filed a motion to dismiss the information due to the alleged defect, the State could have simply reamended the information to comply with one of the exceptions of section 3—6. See *People v. Thompson* (1978), 66 Ill. App. 3d 141, 383 N.E.2d 690.

Moreover, we note this was an amended information. Defendant was not surprised nor was his defense in any way prejudiced by its filing. The conduct alleged in the amended information filed July 10, 1989, was the same as alleged in the original information filed April 24, 1985. Defendant certainly should have been apprised of the possibility of the amended information in October 1988, upon the filing of this court's opinion in *Wasson*.

■ Section 3—7 of the Code states the period within which a prosecution must be commenced does not include any period in which "[a] prosecution is pending against the defendant for the same conduct, even if the indictment or information which commences the prosecution is quashed or the proceedings thereon are set aside, or are reversed on appeal." (Ill. Rev. Stat. 1989, ch. 38, par. 3—7(c).) Conduct is defined as "an act or a series of acts, and the accompanying mental state." (Ill. Rev. Stat. 1989, ch. 38, par. 2—4.) Prosecution is defined as "all legal proceedings by which a person's liability for an offense is determined, commencing with the return of the indictment or the issuance of the information, and including the final disposition of the case upon appeal." (Ill. Rev. Stat. 1989, ch. 38, par. 2—16; *People v. Covelli* (1989), 184 Ill. App. 3d 114, 540 N.E.2d 569.) Defendant's conviction should not be reversed due to the State's failure to comply with the statute of limitations.

Affirmed.

SPITZ and GREEN, JJ., concur.