THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALPHONSO POLLARD, Defendant-Appellant.

Third District   No. 3—90—0371

Opinion filed March 12, 1992.

Kenneth D. Brown, of State Appellate Defender's Office, of Ottawa, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (Rita Kennedy Mertel, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

A jury convicted the defendant, Alphonso Pollard, of aggravated criminal sexual assault (Ill. Rev. Stat. 1989, ch. 38, par. 12—14(b)(1)). The trial court sentenced him to a 24-year prison term. The defendant appeals.

The record shows that the victim, S.Y., was 10 years old at the time of the offense. The defendant, S.Y.'s mother's boyfriend, was living with them. According to S.Y., during a weekday in July of 1989 she was showering when the defendant entered the shower, picked her up, and stuck his "private parts" in her. Later that same day, the defendant was playing with S.Y. and her sister. He tied their hands with curtain cord. When S.Y. began hopping upstairs, the defendant picked her up, took her into her mother's room, pulled down S.Y.'s pants and again "stuck his private parts in [hers]." S.Y. testified that her mother was at work when these incidents occurred.

S.Y. further testified that the defendant had vaginally penetrated her on four previous occasions. On three of the four occasions, S.Y.'s mother was at work. On the other occasion, her mother was asleep on the couch. According to S.Y., she first told her mother about the abuse after the defendant moved out of the house in July of 1989. "About three or four days" later, in September of 1989, S.Y. told Phyliss Dewitt after Dewitt showed a movie at school about good and bad touches. S.Y. told Dewitt the defendant had touched her in the shower. About a week later, S.Y. told Kelly Gott, a Department of Children and Family Services (DCFS) worker, that the defendant had touched her in the shower. S.Y. later went to the hospital and told Dr. Jack Whitney about the incident in the shower. At the hospital, S.Y. also told police officer Robin Turner what the defendant had done to her. A few days

later, S.Y. told police officer Victor Puscas what the defendant had done to her on the weekday in July.

S.Y. testified that she did not tell anyone about the incidents sooner because she was embarrassed and because she was afraid of the defendant. She had heard the defendant tell her mother that when he was a gang member, he had cut off women's breasts and private parts, that he had once killed a man, and that he used to put firecrackers in cats' butts. S.Y. further testified that she had seen the defendant throw things at her mother and that he had sprained her mother's arm and bruised her face.

DCFS Investigator Kelly Gott testified that on September 21, 1989, S.Y. told her that in July of 1989 the defendant had vaginally penetrated her in the shower and again later that same day when he tied her hands with curtain rope.

Police officer Robin Turner testified that on September 23, 1989, S.Y. told him that the defendant had "stuck his penis in her" about 2½ months before.

Dr. Jack Whitney testified that he examined S.Y. at the hospital on September 23, 1989. She complained that the defendant had been sexually assaulting her over a one-year period. The most recent assault had occurred when the defendant had tied her hands with socks and then penetrated her vagina with his penis. Dr. Whitney also recalled S.Y. telling him about the defendant sexually assaulting her in the shower. Dr. Whitney's examination revealed that S.Y.'s hymen had been perforated and she had a gaping vulva. In Whitney's opinion, repeated penetration of the vaginal opening during sexual intercourse would produce the gaping of the vulva.

S.Y.'s mother, S.A., testified that the defendant began living with her in January of 1987. After S.A. moved in September of 1988, the defendant continued to live with her "on and off." S.A. described the beginning of her relationship with the defendant as good, but noted that toward the end they engaged in physical fighting in front of S.Y. S.A. obtained an order of protection against the defendant in April of 1989. The following week the couple got back together. S.A. stated that the defendant then continued to live with her in May, June, and July of 1989. S.A. made a final break with the defendant in the middle of July 1989, after he threatened to kill S.A. and her children while he recklessly drove them around in a car.

S.A. further testified that S.Y. told her about the shower incident about one or two months after the defendant had moved out of the house. S.Y. also told S.A. that the defendant had sexually as-

saulted her again, shortly after she got out of the shower. S.A. did not call the police, but told S.Y. to tell a teacher at school about this. S.A. also testified that S.Y.'s behavior had changed after the defendant had lived with them for about a year and a half. S.Y. no longer cared about her personal appearance, did not want to bathe or go to bed, and sometimes wore extra clothes to bed even when it was not cold. Her grades dropped and she began eating more.

Phyliss Dewitt testified that following the showing of a film about child sexual abuse to S.Y.'s class on September 20, 1989, S.Y. told her that the defendant had fondled S.Y. when she was in the shower. A hearing was held prior to trial at which Dewitt was qualified to testify as an expert in the field of child sexual abuse accommodation syndrome, a form of post-traumatic stress disorder. At trial she testified that she had interviewed S.Y. and her mother, and that she had reviewed police and medical reports. In Dewitt's opinion, S.Y. exhibited behavior consistent with a child who had been sexually abused.

The defendant's sister, Freddie Pollard, testified that the defendant lived with her continuously from the beginning of June 1989 until September 1989.

Shorron Moore, the defendant's cousin, testified that in July of 1989, the defendant came to his house every morning between 9 and 9:30. He and the defendant spent the days doing things together. In May, the defendant lived around the corner from Moore with a woman named Angela Randall.

Anthony Pollard, the defendant's brother, testified that S.A. telephoned him after the defendant was arrested in November of 1989. She told Pollard that she knew S.Y. lied a lot and disliked the defendant.

The defendant testified and denied ever sexually assaulting S.Y. He asserted that after S.A. obtained an order of protection against him in April, he moved in with a former girlfriend, Angela Randall, until the first week in June. He then moved in with his sister and stayed with her until his arrest in September. He denied babysitting for S.Y. during May, June, or July. He stated that he spent nearly every day of those months with his cousin, Shorron. During July, the defendant worked afternoons and evenings at a health care center. Also during July, he saw S.A. two or three times a week and occasionally had sex and stayed overnight with her.

The State introduced evidence of the defendant's prior convictions for burglary, possession of cocaine, and attempted obstructing

justice. The jury subsequently found the defendant guilty of aggravated criminal sexual assault.

On appeal, the defendant first argues that his conviction for aggravated criminal sexual assault should be reversed because the victim and her mother testified about other crimes committed by the defendant. Specifically, he complains that the evidence that the victim heard the defendant tell her mother that as a gang member he mutilated women, abused cats, and killed a man was irrelevant. He asserts that the failure to give a limiting instruction concerning how this other crimes evidence was to be used exacerbated the error. He also argues that the victim's mother's testimony about his attempt to kill her family was improper.

Both an objection at trial and a post-trial motion are necessary to preserve an issue for review. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) An objection to evidence on specific grounds waives all other grounds. (*People v. Steidl* (1991), 142 Ill. 2d 204, 568 N.E.2d 837.) When a defendant cross-examines a witness about allegedly improper testimony, he waives any alleged error in the testimony. (*People v. Bost* (1980), 80 Ill. App. 3d 933, 400 N.E.2d 734.) A defendant waives any issue as to the impropriety of evidence if he procures, invites, or acquiesces in the admission of evidence. (*People v. Daniels* (1987), 164 Ill. App. 3d 1055, 518 N.E.2d 669.) A complaint about improper jury instructions must be raised in the trial court or it is waived. *People v. Regains* (1989), 187 Ill. App. 3d 713, 543 N.E.2d 1090.

■ In the instant case, the defendant failed to object to any of S.Y.'s testimony he now complains of on appeal. Furthermore, when he did move to strike testimony about prior incidents involving S.Y. and incidents involving the defendant's alleged violence toward S.A., the defendant did not object to the complained-of testimony.

We also note that some of the complained-of testimony was the result of the cross-examination of S.Y. when she testified three times that she did not report the sexual assaults because she was afraid of the defendant. Thus, the defendant invited her redirect testimony explaining her fear of the defendant.

The defendant also did not tender a jury instruction limiting the use the jury should make of this evidence. The general instruction on the limited use of other crimes evidence was amended with the defendant's approval to apply only to evidence of other crimes committed against the victim, S.Y. Therefore, the defendant has waived the right to complain about the testimony S.Y. gave or the failure

to give a limiting instruction about the use to be made of this evidence.

The defendant also complains of S.A.'s testimony about his alleged attempt to kill her and her family. He did not object at trial or tender a jury instruction limiting the use to be made of the testimony and did not include the issue in his post-trial motion. He has therefore waived the issue.

The defendant next complains that reversible error occurred when Phyliss Dewitt was allowed to testify that S.Y. suffered from post-traumatic stress syndrome as a result of child sexual abuse. He contends that "child sexual abuse accommodation syndrome" (CSAAS) is not a recognized and accepted form of post-traumatic stress syndrome; that Dewitt was not a qualified expert and an adequate foundation was not laid for her testimony; and that the prejudicial effect of her testimony far outweighed its probative value.

■ Initially, we address the defendant's contention that CSAAS is not a recognized and accepted form of post-traumatic stress syndrome. We note that the cases the defendant cites for this proposition are out-of-State cases. We decline to follow these and choose instead to follow the well-reasoned decisions of our Fifth and Fourth District Appellate Courts in *People v. Nelson* (5th Dist. 1990), 203 Ill. App. 3d 1038, 561 N.E.2d 439, and *People v. Wasson* (4th Dist. 1991), 211 Ill. App. 3d 264, 569 N.E.2d 1321, which recognized CSAAS as an accepted form of post-traumatic stress syndrome. Therefore, we find that evidence which is properly presented concerning this syndrome in child sexual abuse cases is admissible.

As aforesaid, the defendant also argues that Phyliss Dewitt was not properly qualified as an expert witness and an adequate foundation was not laid for her testimony. We disagree.

■ It is well settled that the adequacy of an expert witness' qualifications is left to the sound discretion of the trial judge. (*People v. Knox* (1984), 121 Ill. App. 3d 579, 459 N.E.2d 1077.) The indicia of expertise is not a given level of academic qualifications, but whether the expert has knowledge and experience beyond the average citizen which would assist the jury in evaluating the evidence. Whether the specialized knowledge is acquired through education, training, experience, or a combination of each, if the witness possesses such knowledge, she may testify. *People v. Steffens* (1991), 208 Ill. App. 3d 252, 566 N.E.2d 985.

In the instant case, the defendant asserts that Dewitt was not qualified to testify as an expert because she was unable to name

studies which had accepted CSAAS as a reliable concept and because her only formal education with regard to child development was obtained in high school.

The record reveals that at the time Dewitt testified she had been employed by Tri-County Womenstrength in their sexual assault program for over a year. This organization helps victims of sexual assault, domestic violence, and elderly abuse. She was a high school graduate and was attending college working toward a bachelor's degree in social work. She had taken college courses in crisis intervention that dealt with sexual abuse. She had completed an extensive list of seminars and training programs which dealt with sexual abuse. The list is long, and we find it unnecessary to recite each pertinent seminar; however, we note that included in the list was a seminar that described signs to look for in sexually abused children. Dewitt had also presented workshops and taught seminars on sexual abuse for police officers and social workers.

Additionally, Dewitt was a foster mother specializing in sexually abused children. Of the approximately 67 foster children she had had in her home in the last four years, about 55 had been sexually abused. She testified that those children had been placed in her home because she had extensive training in the area of child sexual abuse and had a specialized sexual abuse home. Dewitt had also served on the State and regional advisory boards of the Department of Children and Family Services. She testified that she had talked to hundreds of victims of sexual abuse. She had talked to family members about how children react before, during, and after sexual abuse. She also testified that she had reviewed hundreds of publications on child sexual abuse and had spoken with educators and child psychologists and psychiatrists about child sexual abuse. We find that Dewitt's qualifications as an expert in the area of child sexual abuse were more than adequate, and the trial court did not abuse its discretion in qualifying her as an expert.

With regard to the defendant's contention that an adequate foundation was not laid for Dewitt's testimony, again, we disagree.

Dewitt identified CSAAS, described its characteristics, and stated her opinion that it was a form of post-traumatic stress syndrome. She further testified that CSAAS had been identified in several books and it was recognized by several agencies, including Psychological Associates and Lutheran Social Services, both located in Peoria. Dewitt testified to all the characteristics exhibited by victims of child sexual abuse. She then testified to S.Y.'s changed behavior and explained why it was consistent with child sexual abuse.

She was thoroughly cross-examined by defense counsel regarding the basis of her knowledge of S.Y.'s changed behavior and the basis of her opinion. We also note that the defendant did not present any evidence to establish that CSAAS is not a recognized form of post-traumatic stress syndrome. (See *People v. Wasson* (1991), 211 Ill. App. 3d 264, 569 N.E.2d 1321.) We therefore find that an adequate foundation was laid for Dewitt's testimony.

The defendant also contends that Dewitt's testimony should have been excluded because its prejudicial effect outweighed its probative value. He argues that Dewitt's testimony was, in essence, testimony that the defendant was guilty of sexually assaulting S.Y.

■ We agree with the State's citation to *People v. Wasson* (1991), 211 Ill. App. 3d 264, 569 N.E.2d 1321. The *Wasson* defendant advanced the same argument as does the instant defendant. The *Wasson* court noted that the purpose of section 115—7.2 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat., 1988 Supp., ch. 38, par. 115—7.2) is to provide for the admission of the treating expert's testimony concerning the victim's behavior as being consistent with known syndromes. However, it does not preclude the triers of fact from weighing the expert's testimony and credibility, or obligate them to accept the expert's opinion.

In the instant case, Dewitt testified to her training and qualifications and then to the indicators of sexually abused children. She then opined that S.Y. displayed characteristics which were consistent with a child who had been sexually abused. Defense counsel tried to undermine Dewitt's qualifications and to establish that S.Y.'s behavior could have been due to domestic violence. Thus, the jurors were informed that they were not required to accept Dewitt's testimony. As in *Wasson*, we do not find Dewitt's testimony to have unduly prejudiced the defendant. We therefore hold that the evidence was properly admitted.

The defendant next argues that the trial court erred when it did not allow him to impeach S.Y. with a prior inconsistent statement that she had given to Officer Victor Puscas. In support of his argument, the defendant points out that on cross-examination, S.Y. was asked what she told Officer Puscas. S.Y. responded that she told him "about the one in July" and did not tell Puscas about any other times. Thereafter, the defendant sought to introduce the testimony of Officer Puscas which the defendant contended would impeach S.Y.'s testimony. In an offer of proof, Puscas testified that when he interviewed S.Y. he asked her about the last time she was sexually assaulted. She told him the defendant had assaulted her af-

ter she got out of the shower, dried herself, and got dressed. She did not tell Puscas anything about the defendant assaulting her in the shower. The trial court excluded Puscas' testimony, ruling that it was improper impeachment.

■ It is proper to refuse to allow impeachment of a witness with a prior statement when the prior statement is consistent with the witness' testimony at trial. *People v. Petty* (1987), 160 Ill. App. 3d 207, 513 N.E.2d 486.

An examination of S.Y.'s statement reveals that it was consistent with her trial testimony. Puscas asked S.Y. when she was last abused. S.Y. responded that it was after she got out of the shower. She merely failed to tell Puscas that the defendant had sexually assaulted her twice that same day, once earlier in the shower. Her response to Puscas' question was in no way inconsistent with her testimony at trial wherein she stated that on the same day in July the defendant had sexually assaulted her once when she was in the shower and later in her mother's bedroom. Therefore, the trial court did not err by excluding Puscas' testimony.

Finally, the defendant contends that the trial judge abused his discretion in sentencing him to a 24-year prison term. He argues that the sentence was not proportionate to the nature of the offense committed and was not commensurate with his rehabilitative potential.

■ Sentencing is a matter of judicial discretion, and absent an abuse of that discretion by the trial court, a sentence may not be altered on review. (*People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.) When mitigating evidence is before the trial judge, he is presumed to have considered it absent some indication, other than the severity of the sentence itself, to the contrary. (*People v. Garrison* (1991), 209 Ill. App. 3d 979, 568 N.E.2d 943.) Included among the factors a trial judge may consider when imposing sentence for a sexual offense is the psychological impact of the offense on the victim. (*People v. Edwards* (1990), 195 Ill. App. 3d 454, 552 N.E.2d 358.) A trial judge may properly impose a greater sentence on a defendant who has prior convictions. *People v. Hall* (1985), 134 Ill. App. 3d 961, 481 N.E.2d 290.

In the instant case, there were serious aggravating factors present. S.Y., the young victim, testified that the defendant, who lived with her mother, had sexually assaulted her five times between the fall of 1988 and July of 1989. Substantial evidence was introduced to establish the severe effect the abuse had on S.Y.'s life. Additionally, the defendant had an extensive record of convic-

tions starting as a juvenile. Finally, the evidence introduced at trial showed that the defendant had physically assaulted S.Y.'s mother on several occasions and had had an emergency order of protection entered against him. Under the facts of this case, we find no abuse of discretion in the defendant's 24-year sentence.

The judgment of the circuit court of Peoria County is affirmed.

Affirmed.

McCUSKEY and HAASE, JJ., concur.