(No. 37215.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES MCGRATH, Plaintiff in Error.

*Opinion filed May 27, 1963.*

Jules M. Perleberg and F. Willis Caruso, of Chicago, appointed by the court, for plaintiff in error.

William G. Clark, Attorney General, of Springfield, and Daniel P. Ward, State's Attorney, of Chicago, (Fred G. Leach and E. Michael O'Brien, Assistant Attorneys General, and Edward J. Hladis and Marvin E. Aspen, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Klingbiel delivered the opinion of the court:

The defendant, James McGrath, was tried in the criminal court of Cook County by the court without a jury and found guilty of the crime of taking indecent liberties with a child, for which he was sentenced to the penitentiary for a term of 2 to 6 years. We have issued a writ of error to review the conviction.

The principal contentions advanced, which are somewhat related, are that the complaining witness was not competent to testify and also that the evidence was insufficient to establish the defendant's guilt beyond a reasonable doubt. The girl who was allegedly molested by the defendant was 5 years old at the time of the occurrence and was 6 years old at the time of the trial. In a preliminary examination to establish the qualifications of this witness, she testified that she knew the difference between telling the truth and telling a lie and knew that she would be punished if she told a lie. She had never gone to school or Sunday School and did not know the nature of an oath. The court indicated some doubt as to the qualification of the witness but permitted counsel to examine her so that the court could determine the character of her testimony. She then testified that she had gone to a playground on May 8th. The court asked her if she knew how long ago May

8th was and she replied that she did not and did not know what day of the week or day of the month it was at the time of the trial. She went on to testify that she was playing in the park on the day in question but was unable to tell where the park was. After further questioning in which the witness gave confused and inconsistent answers, it developed that the acts in question took place in a house. She testified that she had never seen the defendant at any time after the occurrence but it was brought out that she had seen him in a police line-up and at a preliminary hearing. When she identified the defendant at the trial the court asked her whether anyone had told her to point out the defendant and she replied that the assistant State's Attorney had told her to point to the defendant. After the court had asked the witness a series of questions, the prosecutor took over the examination and in response to his questions the witness stated that the defendant had taken her to a bedroom in his house. When she was asked what the defendant did at that time, she replied, "Nothing." The prosecutor then abandoned the questioning and remarked to the judge that the judge had done better than he had. The court then permitted the girl's father to question her and under the father's questioning the girl related how the defendant had molested her in the bedroom of his house. The attorney for the defendant attempted to cross-examine the girl but gave up his questioning when the girl replied that she did not know where she lived or when her birthday was.

The girl's father testified that he had left the girl in the playground and when he returned a few minutes later found that she was gone. He testified that she was returned home about 9:00 o'clock at night and that her clothing was soiled and she had marks on her face and body. A doctor testified that his examination of the girl disclosed some abrasions around her vagina and some marks on her breasts that looked like they might have been teeth marks.

Another witness for the prosecution testified that he had found the little girl and her 4-year-old brother at about 8:00 P.M., standing outside a certain building, and that he had taken them home. Two police officers testified that the girl and her brother had identified the defendant at a police line-up. One of the officers testified that the girl had pointed out the building where the alleged molestation occurred and that when they entered the building they found 3 "winos" in one part of the house and a man named Gerry Rabe sleeping on the third floor of the house. Rabe testified that he had first met the defendant a few days before the acts in question. He had a few drinks with the defendant in a tavern and the defendant told him that he was going to stay at a hotel. Rabe told the defendant that he had a key to a house where the defendant could sleep and Rabe gave the defendant a key to the house in which the acts allegedly took place. He testified that he found the defendant's jacket in this house a day or two after he had given the defendant the key.

It is well established that where a conviction for taking indecent liberties is based upon the testimony of a child of tender years, the evidence must be corroborated or otherwise clear and convincing in order to sustain a judgment of guilt. The conviction here depends entirely upon the testimony of the girl who was allegedly molested and her testimony was not of the clear and convincing character required to sustain the judgment of conviction. This fact was recognized by the trial court on several occasions during the trial, which is evidenced by the following remarks: "I don't see how we can possibly get by the admission of this testimony"; "She is at an age where they don't always see things clearly and when they do they don't always remember them"; "I don't see how we can get anything tangible here"; "The question is, and I think it is a serious question, what the right of a little girl of her age to testify to these things; particularly going to accept it, it means a

136

penitentiary sentence." Nevertheless, the trial judge found the defendant guilty and stated that the testimony of the little girl had been cororborated. Our review of the record discloses that the only corroboration was as to the fact that she had been molested at the time and place in question. On the critical issue of the identification of the defendant as the guilty party, there is a complete lack of corroboration. The little girl's identification of the defendant is rendered practically valueless by her admission that the prosecutor told her to point to the defendant and by the fact that she had seen the defendant at the police line-up and at the preliminary hearing but testified that she had never seen him since the date of the crime. The testimony of the police officer that he found three "winos" and Rabe in the building where the acts allegedly took place, when considered with the uncertainty of the little girl's identification, raises a reasonable doubt as to whether, assuming that the evidence was sufficient to establish that the girl had been molested in that building, the defendant was the party guilty of these acts.

While we recognize the serious nature of this offense and are also mindful of the weight to be given to the trial court's findings, we are satisfied that justice requires a reversal of the conviction. It does not appear that any further evidence would be available at a new trial and therefore the cause will not be remanded.

*Judgment reversed.*