THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CURTIS L. WASSON, Defendant-Appellant.

Fourth District   No. 4—87—0617

Opinion filed October 20, 1988.

Daniel D. Yuhas and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellant.

Craig H. DeArmond, State's Attorney, of Danville (Kenneth R. Boyle, Robert J. Biderman, and Kenneth R. Baumgarten, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

Defendant was charged by information with one count of aggravated criminal sexual assault. (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 12—14(b)(1).) The information alleged that between January 1, 1983, and April 24, 1985, defendant, who was 17 years of age or older, committed an act of sexual penetration with a female child who was under 13 years of age when the act was committed. A jury convicted defendant as charged and he was sentenced to 15 years' imprisonment. Defendant appeals his conviction and sentence, arguing the charging instrument was defective, the State did not carry its burden of proof at trial, and the jury instructions were incomplete. We reverse and remand.

On April 24, 1985, defendant Curtis Wasson was charged by information with one count of aggravated criminal sexual assault in violation of section 12—14(b)(1) of the Criminal Code of 1961 (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 12—14(b)(1)). The information alleged that between January 1, 1983, and April 24, 1985, defendant had knowingly committed an act of sexual penetration with his niece, M.F., who was under the age of 13 when the act occurred.

Defendant requests his conviction be reversed (1) because he was charged via a complaint, alleging the offense of aggravated criminal sexual assault had been committed sometime during a two-year period that commenced well before July 1, 1984, the effective date of the statute, and (2) because the State did not prove beyond a reasonable doubt that defendant committed the offense sometime after it was created by statute. Defendant further argues he should not have been tried as charged without a jury instruction specifying the effective date of the statute as an essential element of the offense.

■ Initially we address the sufficiency of the charging instrument. A charging instrument fails to state an offense if the statute under which the defendant is charged and prosecuted is not in effect on the date of the alleged offense. A conviction on a defective instrument must be reversed. (*People v. Spain* (1974), 24 Ill. App. 3d 377, 321 N.E.2d 520; *People v. Hooper* (1974), 21 Ill. App. 3d 28, 314 N.E.2d 618.) On its own motion in a supplemental opinion, the appellate court in *Spain* determined it was plain error for the complaint to charge the defendant with an offense not yet covered by the charging statute. Although the defect issue was not brought to the attention of the trial court, the waiver principle was not applied on appeal. *Spain*, 24 Ill. App. 3d at 381, 321 N.E.2d at 524.

■ The defendant here did not argue to the trial court that the State had filed a defective complaint. The serious nature of the State's error compels us to consider this issue nonetheless. *People v. Terry* (1988), 170 Ill. App. 3d 484, 524 N.E.2d 685.

■ The law governing sex offenses was substantively changed with the enactment of the criminal sexual assault and abuse law of 1984. (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 12—12 *et seq.*; *People v. Fisher* (1985), 135 Ill. App. 3d 502, 481 N.E.2d 1233.) When Public Act 83—1067, effective July 1, 1984, was enacted (1983 Ill. Laws 7251), the legislature set forth a special paragraph which states the act shall only apply to "those persons who commit offenses prohibited under Sections 12—13 through 12—16 of the Criminal Code of 1961, as amended, on or after the effective date of this amendatory Act." (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 12—12.) Thus, the legislature expressly provided a defendant cannot be charged under the new act for an offense committed prior to July 1, 1984. (*People v. Haggard* (1986), 143 Ill. App. 3d 860, 493 N.E.2d 693.) The law was not intended to be applied retroactively. *People v. J.S.* (1984), 103 Ill. 2d 395, 469 N.E.2d 1090.

■ It is clear the one-count information alleging defendant had committed an act of aggravated criminal sexual assault between January 1, 1983, and April 24, 1985, was defective to the extent it charged the act occurred prior to July 1, 1984. At trial the State argued defendant sexually assaulted his niece on numerous occasions during the time period charged. Thus, it would have been better practice for the State to charge defendant under the old statute with one or more counts alleging the offense of aggravated indecent liberties with a child was committed between January 1, 1983, and June 30, 1984 (Ill. Rev. Stat. 1983, ch. 38, par. 11—4.1(a)(1)(A)), and, under the current statute, to enter additional counts for the act or acts

committed between July 1, 1984, and April 24, 1985 (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 12—14(b)(1)).

■■ ■ If an indictment or information contains sufficient information to apprise defendant of the charge with sufficient particularity to prepare his defense and to bar future prosecutions arising out of the same offense, it will be upheld when attacked for the first time on appeal. (*People v. Pujoue* (1975), 61 Ill. 2d 335, 335 N.E.2d 437; *People v. Williams* (1980), 80 Ill. App. 3d 963, 400 N.E.2d 532.) In this case we consider the flaws in the charging instrument are fatal defects which invalidate the entire instrument and warrant the reversal of defendant's conviction.

While the information adequately apprised defendant of the nature, cause, and elements of the charge against him, it also charged him for conduct which occurred before the statute came into effect. Defendant was hindered in the preparation of his defense because he was forced to answer to crimes for which he could not have been lawfully convicted.

■ Extra-indictment offenses are admissible where proof of their existence is independently relevant to show motive, intent, identity, or some other issue connected with the crime charged. (*People v. Friedman* (1980), 79 Ill. 2d 341, 403 N.E.2d 229.) In this case, however, the jury heard evidence of other crimes of defendant of which he was improperly accused. The defective charging instrument was the source of any prejudice defendant may have suffered at trial. Accordingly, we find the information provided an insufficient basis for the State to prosecute defendant as charged.

Next, defendant argues his conviction cannot stand because the State failed to prove beyond a reasonable doubt that the alleged sexual acts occurred on or after the effective date of the statute. Defendant maintains the State was obligated to prove beyond a reasonable doubt the charge against defendant was based upon an act which occurred after June 30, 1984, but the State's evidence at trial did not satisfy that burden. Defendant asserts the majority of the trial testimony indicates the last sexual activity between M.F. and defendant occurred prior to July 1, 1984. We find it necessary to thoroughly review the trial testimony to determine whether the jury's finding of guilt was against the manifest weight of the evidence.

Mrs. Tedrick, the school nurse at M.F.'s grade school, testified that on April 22, 1985, eight-year-old M.F. told her that one day around Easter defendant was baby-sitting and gave M.F.'s brothers some money to go to the grocery store for candy bars. M.F. said she was upstairs changing clothes when defendant came into her bed-

room, took her pants off, threw her on the bed and "put his humper between her legs."

Tedrick testified M.F. referenced the act to Easter in some way. She initially understood M.F. was referring to the most recent Easter in 1985, but when Tedrick inquired, M.F. said: "No, it happened when I was in Mrs. Trask's room." The school records indicated M.F. repeated first grade and consequently was in Mrs. Trask's room for both the 1982-83 and 1983-84 school years. The school year normally is over by the first of June. M.F. was in second grade when she had the conversation with Tedrick. It was Tedrick's understanding that M.F. was describing the most recent incident, but that defendant had assaulted M.F. on previous occasions also.

M.F. also gave a statement to the police and to the Department of Children and Family Services (DCFS) on April 22, 1985. When asked when the last time it was defendant had sexually assaulted her, M.F. responded "a few summers ago." M.F. indicated defendant had placed his penis in her vagina three different times. M.F. was eight years old at the time of the statement. She told the officer she was six years old when defendant first had sex with her and was seven years old the last time. The entire statement to the police and DCFS was introduced as substantive and impeachment evidence.

M.F. testified that the first time defendant assaulted her she was five or six years old and in kindergarten. Defendant was baby-sitting M.F. and her brothers one day. Defendant sent the boys to the store for candy and would not let M.F. go along. M.F. was upstairs changing clothes when defendant entered her room and threw her down on the bed. Defendant took off his clothes and then removed M.F.'s underwear. When asked what happened next, M.F. replied: "Then he, uhm, put his dick into my crotch. He started moving back and forth—I mean up and down." M.F. said this hurt her. Defendant told M.F. to keep the incident a secret and he would buy her toys.

M.F. indicated defendant assaulted her many times again, but she could not remember how often. M.F. said she was in Trask's room when it happened the most. Defendant assaulted her in the boys' room, usually at night, when everyone was in bed. M.F. testified that the last time it happened was "a week or a month" before she talked to Tedrick. Two days before she talked to Tedrick, M.F. told defendant she was not going to let him do anything to her anymore and she let defendant know she was going to tell on him. After M.F. rebuffed him, defendant never again spent the night at M.F.'s house.

M.F. remembered telling Tedrick, the police, and a doctor about what defendant was doing to her. She did not recall exactly what she

told the police and the doctor, but she said she told them the truth as best she could.

Dr. W. R. Elghammer, a pediatrician, testified as an expert on sexual child abuse. The doctor said it is possible to determine if a female child has been sexually penetrated by measuring the size of the child's hymenal opening and examining her for infection or inflammation. The child's statements are also considered. According to the doctor, a girl the size and age of M.F. would normally have a hymenal opening of approximately three to four millimeters.

Dr. Elghammer testified he took a history from M.F. before she was examined. M.F. made the following statement: "My uncle took off his clothes and my clothes and laid on top of me and put his thing inside my thing." The examination revealed M.F. had a hymenal opening of eight millimeters. The doctor's diagnosis was that she had been sexually abused.

On cross-examination the doctor said M.F. told him the incidents with defendant occurred once three years prior and twice 1½ years prior to the examination on April 23, 1985. Dr. Elghammer believed that if M.F. had been penetrated by the penis of an adult male within a week to four weeks prior to his examination, her hymenal opening would have been larger. Frequently there is tearing right after intercourse, but depending on whether or not lubrication was used and the depth of penetration, such evidence might not be visible a week to a month later.

Defendant notes that M.F.'s trial testimony indicating defendant last sexually assaulted her a week or a month prior to April 22, 1985, directly conflicted with her pretrial statements to the police and to the doctor. Her testimony was also contrary to the medical evidence of Dr. Elghammer, who testified that the size of M.F.'s hymenal opening was too small to have been penetrated a week or a month prior to his examination. The doctor found no damage to M.F.'s vaginal area which would have indicated recent penetration. According to M.F., penetration had occurred each time defendant assaulted her and it was painful. Thus, defendant maintains that if the most recent attack had occurred within a few weeks prior to M.F.'s physical examination, there would have been evidence of some physical damage to M.F.'s person.

In *People v. McGrath* (1963), 28 Ill. 2d 132, 190 N.E.2d 746, the supreme court reversed a conviction for taking indecent liberties with a child when the State's entire case was based on the confusing and conflicting testimony of the six-year-old complainant. The court held "that where a conviction for taking indecent liberties is based

upon the testimony of a child of tender years, the evidence must be corroborated or otherwise clear and convincing in order to sustain a judgment of guilt." *McGrath*, 28 Ill. 2d 132, 135, 190 N.E.2d 746, 748.

In *People v. Server* (1986), 148 Ill. App. 3d 888, 499 N.E.2d 1019, *cert. denied* (1987), 484 U.S. 842, 98 L. Ed. 2d 88, 108 S. Ct. 131, this court held:

> "It is not necessary that the testimony of the complaining witness be crystal clear and perfect in order to be deemed clear and convincing. [Citation.] The credibility of the complaining witness is a question for the trier of fact, and its determination is entitled to great weight. A reviewing court will not reverse the conviction unless the evidence is so unsatisfactory or improbable that a reasonable doubt as to the defendant's guilt remains." (*Server*, 148 Ill. App. 3d at 894-95, 499 N.E.2d at 1024.)

In *People v. Sexton* (1987), 162 Ill. App. 3d 607, 612, 515 N.E.2d 1359, 1363, this court added that the child's inability to remember the dates and times of the alleged offense does not render the testimony unclear, rather it is merely a factor to be weighed by the fact finder.

In this case the child had no trouble testifying as to when she was sexually assaulted. When M.F. testified defendant last had intercourse with her a week or a month before she talked to Tedrick in April of 1985, she said she knew the difference between a truth and a lie and that she was only in court to tell the truth. On cross-examination, M.F. said that when she told Tedrick the attack happened around Easter, she was probably referring to the first time defendant had molested her.

M.F. said she told the police and Dr. Elghammer the truth as best she could recall, and she remembered telling the police defendant assaulted her three times. On redirect, the following colloquy took place:

> "Q. [M.F.], when you talked to the police and you told them about three times—
> A. Yeah.
> Q. Ok. It did happen three times didn't it?
> A. Yes.
> Q. Okay. But it happened more than that too, didn't it?
> A. Yeah.
> Q. Okay. Was there a reason why you didn't tell him about all the other times?

A. Yeah, because I was a little bit scared, and I didn't want to tell 'em all the times that he had did it."

██ █ An appellate court must not substitute its judgment for that of the fact finder when the testimony is merely conflicting. "Only where the evidence fails to sustain the verdict, or is improbable, unsatisfactory or inconclusive, may we set aside a conviction; and there it is our duty to do so." (*People v. Ellis* (1978), 74 Ill. 2d 489, 496, 384 N.E.2d 331, 334.) It is not improbable M.F. was, as she testified, frightened when she initially related the traumatic events to the police and the doctor. Her fear would explain the discrepancy between her testimony and the testimony of the adults who confronted her about her uncle's conduct. The fact that M.F. unequivocally told the court the incidents of misconduct by defendant were so numerous that she could not remember the exact number of times defendant had sexually assaulted her made the State's case even stronger. We find that M.F.'s testimony clearly and convincingly related to the jury that at least one incident of abuse occurred after the statute became effective. The verdict of guilty is not against the manifest weight of the evidence.

Finally, defendant concedes it is not normally necessary for the trier of fact to determine whether or not the acts of criminal sexual assault occurred on or after July 1, 1984. However, in the present case, defendant contends there was substantial evidence presented at trial that the alleged criminal acts may have occurred prior to the effective date of the alleged offense. Hence, in this particular case it was an essential element of the crime that the aggravated criminal sexual assault occurred on or after July 1, 1984. Defendant maintains the trial court erred in refusing an instruction which would have included as an essential element of the offense that the act of sexual penetration occurred on or after the effective date of the statute. We agree.

██ █ Jury instructions apply the correct principles of law to the evidence that is before the jury. "A defendant has a right to a full statement of the law from the court, and failure to give such a tendered full statement, when the jury consequently falls into error, is sufficient reason to justify a reversal." (*People v. Mitchell* (1975), 27 Ill. App. 3d 117, 121, 327 N.E.2d 158, 161.) We find in the limited circumstances of this case the trial court erred in refusing to instruct the jury that defendant could not be convicted as charged if the sexual misconduct occurred prior to July 1, 1984. Although we are convinced by M.F.'s trial testimony that an act of aggravated criminal sexual assault was committed by defendant after July 1, 1984, with-

out a limiting instruction it is impossible to know whether the jury instead convicted defendant for an act performed, as alleged in the complaint, during the period which predated the statute under which he was charged.

For the reason the information charged defendant for an offense which could have occurred before the corresponding statute was legally operative, we find it necessary to invalidate the entire charging instrument and the resulting conviction. The defective nature of the instrument, coupled with the conflicting testimony as to when the offense was committed, and the trial court's refusal to instruct on the effective date of the statute, require a reversal of the conviction and remand for a new trial.

Reversed and remanded.

McCULLOUGH and SPITZ, JJ., concur.