2021 IL App (2d) 190329-U
Nos. 2-19-0329 & 2-19-0452 cons.
Order filed September 9, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 15-CF-467 |
| ROBERT J. LIBRICZ, | ) ) ) | Honorable James S. Cowlin, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court.
Justices Hudson and Brennan concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Though the indictment alleged a date range for sex offenses that included time before the effective date of the statute creating the offense, this defect was not fatal to the indictment. Defense counsel was aware that the law had changed during the specified time frames and could have prepared an appropriate defense. Also, the allegations were sufficient to allow defendant to assert a double jeopardy bar to subsequent charges based on the same conduct.

¶ 2    Following a bench trial, defendant, Robert J. Libricz, was convicted of, *inter alia*, two counts of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 1996)). On appeal, defendant argues that the indictment was fatally defective, and his convictions must be

reversed because the alleged period in which the acts took place included time before the effective date of the statute creating the offense. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On June 25, 2015, defendant was charged in an 11-count indictment with various sex offenses against two of his daughters, D.H. and K.L., alleged to have been committed between 1987 and 2006, when the victims were minors. Counts I and II charged defendant with predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 1998)) and criminal sexual assault (720 ILCS 5/12-13(a)(3) (West 2004)), respectively, against D.H., who was born on May 4, 1992.[1] Counts III through XI charged defendant with various sex offenses against K.L., who was born on March 27, 1984.

¶ 5      At issue here are counts VI and VIII, charging predatory criminal sexual assault of a child. The offense of predatory criminal sexual assault of a child was created by Public Act 89-428, with an effective date of December 13, 1995. Before then, the offense existed in section 12-14(b)(1) of the Criminal Code of 1961 (720 ILCS 5/12-14(b)(1) (West 1994)) as one of the several different ways in which a person could commit aggravated sexual assault. See *People v. Tellez-Valencia*, 188 Ill. 2d 523, 529 (1999) (Rathje, J., dissenting). "Public Act 89-428 moved the offense from the aggravated criminal sexual assault statute and designated it the separate offense of predatory criminal sexual assault of a child." *Id.* Public Act 89-428 was later declared unconstitutional for violating the single-subject clause of the United States Constitution. *Johnson v. Edgar*, 176 Ill. 2d

---

[1] Defendant brought a motion to sever counts I and II, which the trial court granted. The State first proceeded to a bench trial on the allegations involving K.L.

499 (1997). This rendered the offense of predatory criminal sexual assault of a child "void *ab initio*; that is, it was as if the law never existed." *Tellez-Valencia*, 188 Ill. 2d at 526. The General Assembly reenacted the offense in Public Act 89-462, with an effective date of May 29, 1996. "[T]his reenactment had the effect of creating an entirely new criminal statute." *Tellez-Valencia*, 188 Ill. 2d at 526.

¶ 6    Count VI charged that, "on or between March 27, 1995 and March 27, 1997, inclusive," defendant committed predatory criminal sexual assault of a child, "in violation of Chapter 720, Section 5/12-14.1(a)(1) of the Illinois Compiled Statutes," in that he "committed an act of sexual penetration with K.L., who was under 13 years of age," when he "caused his penis to make contact with the vagina and/or anus of K.L."

¶ 7    Count VIII charged that, "on or between March 27, 1995 and March 27, 1997, inclusive," defendant committed predatory criminal sexual assault of a child, "in violation of Chapter 720, Section 5/12-14.1(a)(1) of the Illinois Compiled Statutes," in that he "committed an act of sexual penetration with K.L., who was under 13 years of age," when he "inserted his penis inside the vagina of K.L."

¶ 8    Counts VII and IX charged defendant based on the same alleged acts and period in counts VI and VIII, respectively. However, those counts alleged the offense of aggravated criminal sexual assault "in violation of 720 ILCS 5/12-14(b)(1) of the Illinois Compiled Statutes."

¶ 9    On April 26, 2017, defendant filed a motion for a bill of particulars, arguing that he was unable to prepare his defense. Defendant argued, *inter alia*, that "[t]here have been substantive law changes both within the date ranges as well as in the time period between the specified date ranges and the charging date."

¶ 10      On May 4, 2017, defendant filed a motion to dismiss the indictment, arguing that counts I and III-XI were barred by the statute of limitations. On June 22, 2017, defense counsel advised the trial court that he had withdrawn the motion.

¶ 11      The hearing on the motion for a bill of particulars took place on August 3, 2017. Defense counsel argued at the hearing that the State "pled a range" and that "the law changes over these ranges." Counsel argued that he could not prepare a defense, because he "[did not] know what law we are talking about *** and this isn't supposed to be a guessing game." Further: "It seems there is a due process violation to say I have to generally prepare for some unspecified law and we are going to sort it out at trial. I don't think that's the way the system was set up, so it impacts our defense and it impacts our ability to negotiate and it impacts everything."

¶ 12      The trial court denied the motion, stating that it was permissible to allege a range of dates in which the offenses allegedly occurred. The court stated: "As long as the crime occurred within the statute of limitations and prior to the return of the charging instrument, the State need only provide the Defendant with the best information it has as to when the offenses occurred."

¶ 13      On November 1, 2018, the matter proceeded to a bench trial. The court granted the State's motion to dismiss counts VII and IX (each charging aggravated criminal sexual assault), and the State proceeded on counts III, IV, V, VI, VIII, X, and XI. Four witnesses testified for the State, including K.L. Four witnesses testified for the defense, including defendant. The State presented three rebuttal witnesses.

¶ 14      K.L. testified that she had three sisters, D.H., J.L. (born 10/27/85), R.L. (born 6/27/94), and one brother, R.J.L. (born 5/23/90). K.L. testified as follows about the allegations in count VI. When she was "about 11," she was sleeping on the couch in the living room of the family home when she woke up with defendant on top of her. Defendant was attempting to penetrate her vagina

with his penis. Defendant's penis touched her vagina and her anus. On cross-examination, defense counsel asked: "At that time, I believe you said it was somewhere between the ages of 11 and 13?" K.L. responded: "In there."

¶ 15    K.L. testified as follows about the allegations in count VIII. When K.L. was "in the sixth grade," she had asked defendant for permission to attend a sixth-grade dance. Defendant told her that she could go but that she would have to first shower. K.L. went to the upstairs bathroom to shower. While she was showering, defendant entered the bathroom, took off his clothes, and entered the shower. Defendant bent K.L. over and penetrated her vagina with his penis from behind. On cross-examination, K.L. testified that, in sixth grade, she would have been 11 when the school year started and turned 12 during the school year.

¶ 16    K.L. testified that, in March 2015, she and D.H. went to the McHenry County Sheriff's Office to report allegations of abuse against defendant and met with McHenry County Sheriff's detective Michelle Asplund. On April 1, 2015, K.L. had a telephone conversation with defendant in Asplund's presence, which was recorded. On April 13, 2015, K.L. met with defendant in person, while wearing a recording device provided to her by Asplund. The recordings were admitted into evidence as People's exhibit No. 1 and were played for the trial court.

¶ 17    During the April 1, 2015, telephone conversation, K.L. told defendant that she missed spending time with the family. K.L. told defendant that she knew that they had sex and that she wanted him to apologize for what he did. Defendant commented about D.H. and about things being posted on the Internet to ruin their lives. Defendant denied that he had sex with K.L. and stated, "You know, you guys didn't have to go down this fucking route." K.L. commented that she kept having flashbacks about when they had sex and defendant said, "I don't know what to say to you." Throughout the conversation, defendant denied K.L.'s allegations. Defendant told K.L. that if she

wanted to talk to him, she needed to do so in person. When she asked defendant if he would apologize, he told her that he was not going to apologize for anything. When K.L. stated that she could not believe that defendant would not apologize to her, he said that he did not trust anyone anymore and that everyone was trying to ruin their lives.

¶ 18    During the April 13, 2015, conversation, which took place at defendant's place of employment, K.L. told defendant that she wanted the apology that he told her he would give her in person. She said that she wanted to come back to her family but that she was not going to unless he apologized. Defendant asked K.L. what she needed an apology for. K.L. replied, "You know for what dad. You know for what." Defendant replied, "I know. What am I going to do about you and the other fucking asshole sister of yours." Defendant went on to talk about posts that D.H. made on Facebook. K.L. again stated that she wanted her apology and that it was all that she expected from him. Defendant commented that he thought that K.L. was in counseling. Defendant then stated: "You know Ruby apologized to somebody he did something to and he's going to jail. I don't want to go to fucking jail for anything." Defendant asked K.L. if she was wearing a recording device and she told him that she was not. Defendant asked K.L., "So what am I supposed to tell your mother [unintelligible] all this? How do I explain that to her?" K.L. told defendant that her mother was "fucking blind." Defendant stated: "Well, it seems like all you guys want to do is ruin our entire life, which you guys have halfway succeeded in doing." He stated: I don't know why this has become such a fricking issue all of a sudden." Defendant again commented on things being posted on Facebook, stating that he did not know who started it or why. K.L. said: "Because [D.H.] said you molested her when she was little." K.L. stated: "And I know what you did to me, dad." K.L. then commented that she was not sure if "it ever happened to [R.L.]" but that J.L. said that "it happened to her too" but "she recanted" because "she needed somewhere to live."

Defendant then stated that nothing ever happened with R.L., J.L., or D.H. Defendant stated: "I don't even know where to begin with this. I mean once you squirt the toothpaste out of the tube it, you can't put it back in so I don't know what's going to go on." K.L. then asked defendant if he was going to apologize to her on his death bed, and he responded: "I thought about that." Defendant later stated: "I guarantee we didn't have a perfect normal family, but I don't think anybody's got a perfect normal family. I never meant to hurt you or anybody, [K.L.]" Defendant told K.L. that her mom did not want to have anything to do with D.H. Defendant then stated, "You on the other hand, I don't know, your mom told me she thinks something was going on, blah, blah, whatever. You know, I gotta live with everything I've done, I—I'm not happy with a lot of things I did. Would I do things different? Yeh." At that point, someone entered the room. After the individual left, as K.L. was saying goodbye to defendant, he stated: "Your mom thinks something went on. I don't know why it went on. I loved you the most out of all the kids [K.L.], you were my first born, you were my pride and joy. I wasn't drunk. I wasn't high. Nothing like that. I loved you. I don't know."

¶ 19    D.H. testified regarding other acts of sexual conduct committed by defendant. In 1999, when DH was between five and seven years old, she attended a daddy-daughter dance with defendant. After the dance, she was alone with defendant in his bedroom and he put his pinky finger in her vagina. In approximately 2004 to 2006, when D.H. was about 13 years old, she fell asleep with her parents in their bed. When she woke up, defendant had his hand in her underwear, penetrating her vagina with his fingers.

¶ 20    Asplund testified that she met with K.L. and D.H. on March 11, 2015. She spoke with them separately. She subsequently obtained an "overhear" order and, on April 1, 2015, recorded the telephone conversation between K.L. and defendant. Asplund listened to the call while in progress.

K.L. was "extremely emotional" and "upset" during the call. On April 13, 2015, she set up a "person-to-person overhear" with K.L. She provided K.L. with a recording device to wear on her person. K.L. then drove to defendant's place of employment and had a conversation with him. Afterward, K.L. returned the recording device to Asplund. On April 17, 2015, Asplund interviewed defendant at his place of employment. When she told him that she was investigating an allegation of sexual abuse, he responded that he knew what she was talking about. When she told him that K.L. reached out to him for an apology and that he apologized to K.L, defendant told her that "he did not apologize for any sexual abuse." Rather, "[h]e apologized for how bad her life was."

¶ 21    Beverly B. testified that, in the summer of 1989, her daughter, M.B., was friends with K.L. and J.L., who was K.L.'s younger sister. Beverly was in her vehicle, with M.B., K.L., and J.L., when M.B., who was about five years old, stated that "boys have penises and girls have vaginas." According to Beverly, K.L. then stated, "[W]e take a shower with daddy, and he makes us touch his penis." J.L. "scoochied back in the seat," and Beverly said, "I'll take care of it." Beverly made an anonymous report to "DCFS." K.L.'s mother confronted Beverly, and Beverly denied making the report. Beverly had no further contact with the family until November 2015 when she had contact with K.L. In January 2016, Beverly gave a statement to the police.

¶ 22    For the defense, J.L., testified that she was K.L.'s sister and was about 19 months younger that K.L. She testified that, while growing up, she always shared a bedroom with K.L. and they were very close. J.L. never saw defendant inappropriately touch K.L. Defendant never touched J.L. inappropriately and never made her shower with him. J.L. had no recollection of being in a car with K.L. when K.L. told an adult about touching defendant's penis.

¶ 23   R.L. testified that she was born in 1994 and was the youngest of defendant's five children. While growing up, she shared a bedroom with D.H., who was two years older than her. She never saw defendant do anything inappropriate to K.L. or D.H.

¶ 24   Kimberlee Kelly Libricz, defendant's wife, testified that she had been married to defendant for 35 years and they had five children. Kimberlee was not "on speaking terms" with K.L. because she did not agree with how K.L. was raising her children. Kimberlee never saw defendant abuse K.L.

¶ 25   Defendant testified that the sexual acts testified to by D.H. and K.L. never happened and that he never did anything sexually inappropriate with either of them.

¶ 26   In rebuttal, D.H. testified regarding a photograph taken during the daddy-daughter dance. Beverly testified regarding three photographs taken of herself, her daughter, and K.L. in defendant's home over Thanksgiving in 1989. Shelly Pier, a licensed clinical social worker specializing in sexual violence trauma, provided expert testimony on post-traumatic stress disorder, rape trauma syndrome, and child abuse accommodation syndrome.

¶ 27   The trial court found defendant not guilty of count III but guilty of all remaining counts. The court found that D.H. was a credible witness and that her testimony as to other-crimes evidence corroborated the State's case against defendant. The court also found that, although defendant denied all allegations, "he made incriminating statements when confronted by [K.L.] on April 13, 2015." The court stated:

> "The Defendant stated to [K.L.] in response to her plea for an apology, quote, how do I explain it to your mother; quote, I never meant to hurt you; quote, I have to live with everything I have done, closed quote. Other incriminating statements are included in the recording, admitted as State's Exhibit Number 1.

Defendant attempted to explain away the statements when testifying, but the Court gives no weight to those explanations. The recorded statements made to [K.L.] are clear and unequivocal.

It is not logical for the Defendant to address his daughter in the manner he did on April 13, 2015, if he had not committed acts against her."

¶ 28    The court specifically noted that "[e]ach offense is charged pursuant to the law in effect at the time of the alleged offense." Concerning count VI, the court cited the relevant statutory provision and noted that the act was alleged to have occurred between March 27, 1995, and March 27, 1997. Pointing to K.L.'s testimony, D.H.'s testimony as to other crimes, and defendant's incriminating statements, the court found that "the State has met its burden of proof on all elements of the charged offense." The court also stated:

"Although the Court is convinced beyond a reasonable doubt the incident occurred when [K.L.] was under age 13, the Court does not find [K.L.] was under age 12 when the act occurred. Doubt exists as to the age of 11, as testified to by [K.L.], as [K.L.] could only say she was around 11."

Concerning count VIII, the court again cited the relevant statutory provision and noted that the act was alleged to have occurred between March 27, 1995, and March 27, 1997. The court stated that it found "[K.L.'s] testimony credible." The court further stated that "[d]efendant's recorded statements made in person to [K.L.] on April 13, 2015, corroborate[d] [K.L.'s] testimony, as does the testimony of [D.H.]" The court found that "the State has proved all elements of Count VIII beyond a reasonable doubt."

¶ 29    On December 19, 2018, defendant filed a motion for a new trial, which was denied. Following a sentencing hearing, the trial court sentenced defendant on counts IV, V, VI, VIII, X,

and XI, to concurrent prison sentences of 5, 12, 12, 18, 5, and 8 years, respectively. On March 25, 2019, defendant filed an amended motion for reconsideration of his sentences. The trial court denied the motion on March 28, 2019.

¶ 30    On April 11, 2019, defendant pleaded guilty to count I and was sentenced to six years in prison, to be served concurrently with the above sentences. Count II was dismissed per the plea.

¶ 31    On April 22, 2019, defendant filed both a motion to correct certain errors in sentencing and a notice of appeal (appeal No. 2-19-0329). The motion was denied on May 13, 2019. On May 24, 2019, defendant filed a notice of appeal from the order entered on May 13, 2019 (appeal No. 2-19-0452). On July 5, 2019, we consolidated defendant's appeals.

¶ 32                                    II. ANALYSIS

¶ 33    Defendant contends, for the first time on appeal, that counts VI and VIII in the indictment, alleging predatory criminal sexual assault of a child, were fatally defective, because the offense did not exist before May 29, 1996, and each count alleged that the act occurred on or between March 27, 1995, and March 27, 1997. Defendant argues that, because he was charged with offenses that did not exist during portions of the alleged periods, he was prejudiced in the preparation of his defense. Thus, according to defendant, his convictions for predatory criminal sexual assault of a child as charged in counts VI and VIII of the indictment must be vacated.

¶ 34    The State responds that counts VI and VIII were not defective, because the State charged defendant with a continuing course of conduct that straddled the effective date of the offense. In addition, the State argues that defendant was not prejudiced by the alleged defect, because he "possessed specific knowledge about the alleged time frames within the indictment, along with the applicable predatory criminal sexual assault statute in effect" Alternatively, the State argues that, if we find the convictions void, we should enter judgment on the lesser included offenses of

aggravated criminal sexual abuse or hold that the State may charge defendant with any other applicable offenses in effect on the dates of the alleged acts, such as aggravated criminal sexual assault.

¶ 35    We first make clear our standard of review. "When the sufficiency of the charging instrument is attacked in a pretrial motion, the standard of review is to determine whether the instrument *strictly* complies with the requirements of section 111-3[(a)] of the Code of Criminal Procedure of 1963 [725 ILCS 5/111-3(a) (West 2018)]." (Emphasis in original.) *People v. DiLorenzo*, 169 Ill. 2d 318, 321-22 (1996). However, when an indictment is challenged for the first time on appeal, as in the present case, "the standard of review is more liberal." *Id.* at 322. "In such a case, it is sufficient that the indictment apprised the accused of the precise offense charged with enough specificity to (1) allow preparation of his defense and (2) allow pleading a resulting conviction as a bar to future prosecutions arising out of the same conduct." *Id.* (citing *People v. Thingvold*, 145 Ill. 2d 441, 448 (1991)). In other words, this court should consider whether the defect in the indictment prejudiced defendant in preparing his defense. *Id.*

¶ 36    Defendant relies on *Tellez-Valencia*, *People v. Mescall*, 379 Ill. App. 3d 670 (2008), and *People v. Wasson*, 175 Ill. App. 3d 851 (1988), in support of his argument that his convictions on count VI and VIII must be vacated.

¶ 37    In *Wasson*, the defendant was charged in a one-count information with aggravated criminal sexual assault, based on acts that he committed between January 1, 1983, and April 24, 1985. *Wasson*, 175 Ill. App. 3d at 853. The aggravated criminal sexual assault statute became effective on July 1, 1984. *Id.* At trial, the jury heard evidence that the defendant sexually assaulted the victim on numerous occasions during the period charged. *Id.* at 854. The trial court refused a jury instruction that would have included as an essential element of the offense that the act occurred on

or after the effective date of the statute. *Id.* at 859. The defendant was found guilty. The defendant did not challenge the information in the trial court, but he argued for the first time on appeal that it was defective. *Id.* at 854. The Fourth District agreed. The court held that the information "was defective to the extent it charged [that] the act occurred prior to July 1, 1984." *Id.* The court stated that "the flaws in the charging instrument are fatal defects which invalidate the entire instrument and warrant reversal of [the] defendant's conviction." *Id.* at 855. The court further stated:

> "While the information adequately apprised defendant of the nature, cause, and elements of the charge against him, it also charged him for conduct which occurred before the statute came into effect. Defendant was hindered in the preparation of his defense because he was forced to answer to crimes for which he could not have been lawfully convicted." *Id.* at 855.

The court found that the defective indictment was the source of any prejudice the defendant may have suffered at trial. The court noted that other-crimes evidence is admissible if it is "independently relevant to show motive, intent, identity, or some other issue connected with the crime charged." *Id.* In contrast, "the jury heard evidence of other crimes of defendant of which he was improperly accused." *Id.* Additionally, the court found that "in the limited circumstances of this case the trial court erred in refusing to instruct the jury that defendant could not be convicted as charged if the sexual misconduct occurred prior to July 1, 1984." *Id.* at 859. Although the reviewing court was "convinced" that the victim's testimony established that an act occurred after July 1, 1984, it held that, without a limiting instruction, it was impossible to know whether the jury's verdict was based on an act that predated the effective date of the charged offense. *Id.* The court concluded:

"For the reason the information charged defendant for an offense which could have occurred before the corresponding statute was legally operative, we find it necessary to invalidate the entire charging instrument and the resulting conviction. The defective nature of the instrument, coupled with the conflicting testimony as to when the offense was committed, and the trial court's refusal to instruct on the effective date of the statute, requires a reversal of the conviction and remand for a new trial." *Id.* at 860.

The court noted that "it would have been better practice for the State to charge [the] defendant under the old statute with one or more counts alleging the offense of aggravated indecent liberties with a child between January 1, 1983, and June 30, 1984, [citation] and, under the current statute, to enter additional counts for the act or acts committed between July 1, 1984, and April 24, 1985." *Id.* at 854-55. (On remand, the State filed an amended information charging the defendant with aggravated indecent liberties with a child for the conduct before July 1, 1984, and aggravated criminal sexual assault for the conduct thereafter. *People v. Wasson*, 211 Ill. App. 3d 264, 266 (1991).

¶ 38    In *Tellez-Valencia*, the indictments charged the offense of predatory criminal sexual assault of a child, and the defendants were found guilty. *Tellez-Valencia*, 188 Ill. 2d at 525. While their appeals were pending, the supreme court invalidated the law that created the offense. *Id.* This had the effect of rendering the statute void *ab initio*. *Id.* at 526. The offense was reenacted but the statute did not apply to offenses committed before its new effective date. *Id.* The supreme court held that "[e]ach defendant's charging instrument thus failed to state an offense because the statute under which each was charged and prosecuted was not in effect when the alleged offenses occurred." *Id.* at 526. The court further held that the State could not amend the charging instruments on appeal to allege aggravated criminal sexual assault. *Id.* at 527-28. Pointing to

*Wasson*, the court stated: "[T]he defect caused by charging an offense based upon a statute not in effect when the alleged offense occurred is fatal, rendering the entire instrument invalid, and warranting reversal of defendants' convictions." *Id.* at 527.

¶ 39   In *Mescall*, this court considered both *Tellez-Valencia* and *Wasson*. At issue was whether the defendant's conviction, which the defendant alleged was based on a defective information, was void, or merely voidable, for purposes of a postjudgment challenge in a petition under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2006)) filed beyond that section's two-year limitations period. *Mescall*, 379 Ill. App. 3d at 675-77. There, as in the present case, the defendant was charged in an amended information with predatory criminal sexual assault of a child based on conduct that was alleged to have occurred over a period that included time before the effective date of the statute. *Id.* at 672. We held that the trial court properly dismissed the section 2-1401 petition as untimely, because "any problem with the amended information" did not deprive the trial court of jurisdiction and, thus, the judgment was voidable, rather than void. *Id.* at 675. We distinguished *Tellez-Valencia* based on the fact that, unlike in *Tellez-Valencia*, the offense existed when the defendant committed at least some of the acts in the information. *Id.* 675-76. We noted, moreover, that the holding in *Tellez-Valencia* was not based on the trial court's lack of jurisdiction and whether the judgments were void or voidable. *Id.* at 676. We also distinguished *Wasson*, emphasizing that the trial court erred in that case by refusing to give the tendered jury instruction and that the defendant raised the issue in a timely direct appeal rather than in an untimely section 2-1401 petition. *Id.* at 676-77. We agreed that "the information was defective because a portion of the conduct complained of was alleged to have occurred before the effective date of the statute," but we held that the trial court nevertheless had jurisdiction to enter the judgment and thus the defendant could not challenge it as void in an untimely section 2-1401 petition. *Id.* at 678.

¶ 40    The above cases, particularly *Wasson*, lead us to conclude that counts VI and VIII of the indictment were defective. As in *Wasson*, defendant was charged in counts VI and VIII with offenses that did not exist during a significant portion of the alleged periods. *Wasson* makes clear that those counts were defective to the extent they charged defendant for acts occurring prior May 27, 1996, the effective date of the offense. Although the present case is distinguishable from *Tellez-Valencia* because the offense here did exist during a portion of the alleged periods, we nevertheless note that *Tellez-Valencia* cited *Wasson* with approval. Further, in *Mescall*, the same kind of charging irregularity as we have in this case was found to have rendered the charging instrument in that case defective, albeit not void.

¶ 41    We reject the State's argument that, because the dates alleged straddled the effective date of the offense, counts VI and VIII were not defective. The State claims that it proceeded on a theory that defendant engaged in a continuous course of predatory criminal sexual assault against K.L. where the final act was not complete until March 1997, well after the effective date of the offense. The State cites *People v. McDade*, 345 Ill. App. 3d 912, 915 (2004), for the proposition that a continuous course of conduct is "not complete until the last act [is] accomplished." *McDade* does not apply here. In *McDade*, the defendant was convicted on one count of predatory criminal sexual assault based on numerous assaults that occurred between December 1997 and June 1999. *Id.* at 913. The issue on appeal was whether the defendant was eligible for the harsher restrictions on sentencing credit that became effective in June 1998. *Id.* at 914. The First District found that the defendant was eligible, reasoning that he was charged under a theory that he engaged in a continuous course of conduct that did not end until 1999, after the effective date of the relevant statute. *Id.* at 915-16. Unlike in *McDade*, counts VI and VIII here were not charged as continuous courses of conduct, but rather as discrete instances of sexual misconduct.

¶ 42    Our conclusion that counts VI and VIII were legally defective is not the end of our analysis. As noted above, because defendant is challenging counts VI and VIII for the first time on appeal, the question is whether "the indictment apprised the accused of the precise offense charged with enough specificity to (1) allow preparation of his defense and (2) allow pleading a resulting conviction as a bar to future prosecutions arising out of the same conduct." *DiLorenzo*, 169 Ill. 2d at 322.

¶ 43    Citing *Wasson* in support, defendant argues that he could not adequately prepare his defense, "because the indictment charged him with offenses that did not exist during significant portions of the alleged times when the offenses occurred." The State argues that defendant was not prejudiced in preparing his defense, because he (1) "possessed specific knowledge about the alleged time frames within the indictment, along with the applicable predatory criminal sexual assault statute in effect" and (2) his trial strategy was not complex, consisting of only attacking K.L.'s testimony. We find that the indictment was sufficient to allow defendant to prepare a defense.

¶ 44    Defendant's argument that he could not adequately prepare his defense overlooks what transpired during the hearing on defendant's motion for a bill of particulars. During the hearing, defense counsel stated:

    "[B]efore I filed this, I went to the law library and started a spreadsheet and tried to chart all this and I can tell you, it's very complicated and it's very problematic because some of the law—some of these laws on some of these dates, there is not a book in the law library that even has those laws and it's not included in the subscription—it's not archived on the electronic research stuff. So we're here in a situation where they've alleged such a wide date range that you don't know what the law is going to be, I don't know what the law is

- 17 -

going to be, the [S]tate hasn't told us what law applies and we can't look at a jury and tell them what law applies."

Later, the following colloquy took place:

"THE COURT: Let me ask you this: When you say no one knows what law we are talking about, each particular count gives an on-or-between date. For example, Count 1 on or between February 1, '99 and February 28, 1999. Why can't you determine what the law is in 1999 if that's the problem?

[DEFENSE COUNSEL]: You can, Judge. You can, Judge.

THE COURT: All right.

[DEFENSE COUNSEL]: But let's talk more about—let's talk about the 1987 case—

THE COURT: Well, my point is, they set these kinds of dates out, it looks like, in each and every count.

[DEFENSE COUNSEL]: And, Judge, my point is, over those ranges, some of those ranges, the law changes.

THE COURT: Well, I understand that, that the law—the law may be different in Count 3 between '87 and '89, December 1, '87 and December 1, '89, as to that particular allegation. So you can look to see what law is going to apply to Count 3. There may be—you may be right, if you're going this way, that different laws, because they changed, apply to different counts. You may be right about that.

[DEFENSE COUNSEL]: No, no, no. What I'm saying is from '87 to '89, the statute, there were three different versions of the statute.

THE COURT: In that two-year time period.

- 18 -

[DEFENSE COUNSEL]: Yes.

THE COURT: Okay.

[DEFENSE COUNSEL]: And if I recall—and, Judge, to be completely up front, I tried to look at this for each count and I can't because those books don't even exist in the law library and some of that stuff is not archived on Lexis.

THE COURT: Well, you'll find it."

¶ 45    In denying the motion, the trial court stated:

"I understand the difficulty that is before the defense when we were looking back to the 1980s and the 1990s and trying to determine exactly which version of the statute was in effect at that time. And if the defense were to go back and look and say, well, between '87 and '89—this pertains to Count III—a particular statute was in effect and that statute of limitations as pertains to that offense ran out in whatever year, you're certainly free to bring that motion, and the Court would rule on it."

The court further commented, "[T]hat would be for the defense to examine."

¶ 46    This colloquy establishes that defendant was well aware, before trial, that there had been changes in the law during the periods alleged in the indictment. Defendant does not dispute that counts VI and VIII alleged the proper elements of the offense of predatory criminal sexual assault of a child, along with the proper statutory citation. His only argument concerns the effective date, which he would have discovered had he researched the statute. Counsel argued that he could not prepare a defense, because he "[did not] know what law we are talking about *** and this isn't supposed to be a guessing game." However, counts VI and VIII of the indictment charged defendant with a violation of "Chapter 720, Section 12-14.1(a)(1) of the Illinois Compiled Statutes" and it provided him the alleged dates of the offense. We note, too, that when defendant

filed his motion for a bill of particulars, counts VII and IX of the indictment charged defendant with aggravated criminal sexual assault based on the same physical acts as counts VI and VIII. It was not until the first day of trial that the State *nol-prossed* those counts. Thus, the record shows that counsel had enough information to adequately prepare a defense. See *People v. Cuadrado*, 214 Ill. 2d 79 (2005) (where the record showed that the defendant was aware that the State needed to prove procurement to prove her guilty of solicitation of murder for hire, the defendant was not prejudiced by the State's replacement of the word "procurement" with the word "solicited" in the indictment, even though the terms were not interchangeable); *People v. Rowell*, 229 Ill. 2d 82 (2008) (distinguishing *Cuadrado* on the basis that the *Cuadrado* defendant "could simply look to the statute to determine that the State needed to prove procurement").

¶ 47    To be sure, in *Wasson*, the reviewing court stated that the "[d]efendant was hindered in the preparation of his defense because he was forced to answer to crimes for which he could not have been lawfully convicted." 175 Ill. App. 3d at 855. Defendant claims that he was hindered in the same way. However, *Wasson*, is distinguishable because, in that case, there was no indication that counsel was aware, *before trial*, that the law had changed during the alleged periods. In addition, counsel in *Wasson* proposed a jury instruction that would have informed the jury of the effective date of the offense. Counsel thereby attempted to remedy the defect in the indictment. The present case was a bench trial. "In a bench trial, *** a trial judge is presumed to know the law and to follow it, and this presumption is rebutted only when the record affirmatively shows otherwise." *People v. Ressa*, 2019 IL App (2d) 170439, ¶ 31. Thus, we presume that the trial court, unlike the jury in *Wasson*, was well aware of the effective date of the offense. Here, in issuing its ruling, the court specifically noted that "[e]ach offense is charged pursuant to the law in effect at the time of the alleged offense" and found that the State met its burden of proof as to all the elements of the

offenses charged in counts VI and VIII. The court specifically cited the testimony from K.L. and D.H. as well as defendant's recorded statements. Although defendant asserts that, based on K.L.'s testimony, it is "likely" that the acts occurred before the effective date of the offense, we presume that the trial court found otherwise as it would not have convicted defendant based on acts that occurred before the effective date of the statute. There is nothing in the record to affirmatively indicate otherwise.

¶ 48    *Tellez-Valencia* is also readily distinguishable because, in that case, the offense of predatory criminal sexual assault of a child was invalidated after the defendants had been convicted and while their appeals were pending. The supreme court held that the defendants were prejudiced because the offense was rendered nonexistent during the periods alleged in the indictments and, thus, the defendants were charged and convicted of a nonexistent offense. *Tellez-Valencia*, 188 Ill. 2d at 526-28. Here, the offense existed as of May 29, 1996, within the period during which defendant was alleged to have committed it. Given (1) the allegations in counts VI and VIII, which included the date ranges within which the acts were alleged to have occurred and (2) defense counsel's knowledge that, "over those ranges, some of those ranges, the law changes," we cannot say that defendant was hindered in the preparation of his defense.

¶ 49    We also find that those allegations, along with the record of the proceedings, are sufficient to allow defendant to plead the judgment to bar any subsequent prosecution for the same conduct. See *DiLorenzo*, 169 Ill. 2d at 325.

¶ 50                                    III. CONCLUSION

¶ 51    For the reasons stated, we affirm the judgment of the circuit court of McHenry County.

¶ 52    Affirmed.